[Cite as *Howard v. HCR Manorcare, Inc.*, 2018-Ohio-1053.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| DAVID HOWARD, Individually and on behalf of the Wrongful Death Beneficiaries of DONALD LEE HOWARD | : : : : | Appellate Case Nos. 2016-CA-75 and 2017-CA-16 |
| *Plaintiff-Appellee/Cross-Appellant* | : : : | Trial Court Case No. 2014-CV-0210 |
| v. | : : : | (Civil Appeal from Common Pleas Court) |
| HCR MANORCARE, INC., HEARTLAND EMPLOYMENT SERVICES, LLC, HCR MANOR CARE SERVICES, LLC and HEARTLAND OF SPRINGFIELD, OHIO, LLC | : : : : : | |
| *Defendants-Appellants/Cross-Appellees* | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of March, 2018.

. . . . . . . . . .

MICHAEL J. FULLER, JR., Atty. Reg. No. 0090250, D. BRYANT CHAFFIN, Atty. Reg. No. 0090249, 97 Elias Whiddon Road, Hattiesburg, Mississippi 39402
    Attorneys for Plaintiff-Appellee/Cross-Appellant

ROBERT M. ANSPACH, Atty. Reg. No. 0017263, MARK D. MEEKS, Atty. Reg. No. 0040495, J. RANDALL ENGWERT, Atty. Reg. No. 0070746, JOSEPH S. CENTER, Atty. Reg. No. 0092570, 300 Madison Avenue, Suite 1600, Toledo, Ohio 43604

Attorneys for Defendants-Appellants/Cross-Appellees

. . . . . . . . . . . . .

WELBAUM, P.J.

**{¶ 1}** In this case, Defendants-Appellants, HCR ManorCare, Inc., HCR Manor Care Services, LLC, Heartland Employment Services, LLC, and Heartland of Springfield, Ohio, LLC (collectively, "HCR" or "corporate defendants") appeal from a jury verdict rendered in favor of Plaintiff-Appellee/Cross-Appellant, David Howard, individually and on behalf of the wrongful death beneficiaries of Donald Lee Howard ("Howard"). According to HCR, the trial court erred by failing to grant HCR's motion for judgment on the pleadings on the wrongful death claims, by submitting an improper jury form, by failing to cure prejudicial statements of Howard's counsel during closing argument, and in instructing the jury.

**{¶ 2}** As was noted, Howard filed a cross-appeal. Howard contends that the trial court erred in granting HCR's motion for judgment on the pleadings concerning three survival claims, and by denying Howard's motion for pre-judgment interest.

**{¶ 3}** We conclude that the trial court did not err in denying HCR's motion for judgment on the pleadings, as HCR admitted liability for the wrongful death, and any alleged error concerning defects in Howard's Civ.R. 10(D)(2) affidavit is irrelevant. By admitting liability, HCR waived any error and is precluded from raising this error on appeal. Furthermore, compliance with Civ.R. 10(D)(2) does not pertain to a court's subject matter jurisdiction and can be waived.

**{¶ 4}** We further conclude that HCR is precluded from raising issues regarding the jury interrogatories and verdict form, as HCR told the court its instructions were correct.

Even if this issue were considered on a plain error basis, there was no error that would warrant reversal. The trial court also did not err in failing to include an instruction on negligence and proximate cause, as there was no basis for this instruction. In addition, the trial court did not err in failing to give a curative instruction during Howard's closing argument. Howard's argument was not prejudicial, and a curative instruction was not required for one isolated comment that Howard's counsel immediately corrected.

{¶ 5} Concerning Howard's cross-assignments of error, the trial court did err in granting a motion for judgment on the pleadings in connection with Howard's survival claims (Counts One, Three, and Four of the Second Amended Complaint). Based on the content of the pleadings, the HCR corporate defendants were not medical providers and the survival claims were also not "medical claims" for purposes of R.C. 2305.113(E)(3).

{¶ 6} Finally, the trial court did not abuse its discretion when it refused to give Howard a continuance to conduct discovery in connection with his motion for prejudgment interest. Howard would have been well aware of his right to conduct discovery, but failed to even mention discovery until the day before the scheduled non-oral evidentiary hearing. Accordingly, the judgment of the trial court will be affirmed in part and reversed in part, and will remanded for further proceedings solely on the survival claims (Counts One, Three, and Four of the Second Amended Complaint).

I. Facts and Course of Proceedings

{¶ 7} In April 2014, Howard filed a complaint, individually and on behalf of the wrongful death beneficiaries of Donald Lee Howard ("Donald"), alleging that Donald had

suffered injuries and wrongful death while he was a nursing home resident at Heartland of Springfield between December 11, 2011 and April 5, 2012. The named defendants included HCR, the local administrator of the nursing home, and various defendants labeled "John Does 1 through 10" and "Unidentified Entities 1 through 10."

{¶ 8} The complaint contained claims for negligence for lethal and non-lethal injuries, medical malpractice, malice, fraud, breach of fiduciary duty, and premises liability. Attached to the complaint was a request for an extension of time to file an affidavit of merit pursuant to Civ.R. 10(D)(2)(b), and the court subsequently granted Howard a 90-day extension of time.

{¶ 9} According to the complaint, HCR ManorCare Inc. was in the business of operating nursing homes, with a home office in Toledo, Ohio. HCR ManorCare Services, LLC, Heartland Employment Services, LLC, and Heartland of Springfield, LLC, were corporations engaged in custodial and personal care of the elderly. Some of these corporations were Ohio corporations and some were incorporated in Delaware, but Toledo, Ohio was their principal place of business.[1]

{¶ 10} In June 2014, Howard filed a first amended complaint containing the same claims. Howard attached the affidavit of a geriatric nurse practitioner and registered nurse, who expressed various opinions about deviations from the standard of care by the nursing home and its personnel. After filing an answer to the amended complaint, HCR filed a motion to dismiss and a motion for summary judgment.

{¶ 11} The motion contended that Counts One, Three, Four, Six, Nine, Ten, and

---

[1] According to HCR's answer, HCR ManorCare Services, LLC was improperly referenced as HCR ManorCare Services, Inc. in the complaint. This error had no effect on the case. At times, even HCR confused "Inc." and "LLC."

Eleven were medical claims under R.C. 2305.113(E)(3), and were subject to a one-year statute of limitations that had expired on April 5, 2013, nearly a year before the complaint was filed. In addition, HCR contended that Count Eight, which stated a claim for punitive damages, failed as a matter of law. On October 15, 2014, the trial court agreed with HCR, and dismissed these counts. The court then set a November 2014 pre-trial on the remaining claims (Counts Two, Five, and Seven).

{¶ 12} Howard filed a notice of appeal from this decision, but his appeal was dismissed for lack of a final appealable order. In late May 2015, HCR filed a motion for judgment on the pleadings, arguing that Howard's 10(D)(2) affidavit was defective because the nurse was unqualified to render an opinion regarding the cause of death. In June 2015, the trial court overruled HCR's motion for judgment on the pleadings.

{¶ 13} In January 2016, the court granted Howard's request to file a second amended complaint to add survival claims for corporate negligence, nursing home negligence, and administrator negligence. Howard then filed a second amended complaint containing six counts, which included both survival and wrongful death claims. This was followed on March 16, 2016, by HCR's motion for judgment on the pleadings. In the motion, HCR again argued that the claims in Counts One, Three, and Four for non-lethal injuries were barred by the statute of limitations because they were "medical claims." HCR also filed an answer to the second amended complaint the following day.

{¶ 14} A jury trial was scheduled for April 5, 2016. On March 28, 2016, HCR filed an "omnibus" motion in limine, seeking to limit testimony about many items, including medical diagnosis or causation opinions of Howard's nursing expert. HCR also asked the court to limit damages pursuant to R.C. 2323.42 and to bifurcate the trial under R.C.

2315.21. On March 31, 2016, the trial court granted HCR's motion for judgment on the pleadings, again finding that the claims for non-lethal injuries were medical claims that had been filed outside the statute of limitations in R.C. 2305.113(A).

{¶ 15} On the same day, HCR filed a motion for summary judgment as to allegations seeking punitive damages. This was based on the deposition of Howard's medical expert, Dr. Fannin, who had testified to various bases of liability of HCR for Donald's death, including neglect and failure to perform a proper evaluation. According to HCR, these deficiencies in care did not support the standard required to submit the issue of punitive damages to a jury. The trial court concluded that the motion would be held in abeyance pending the outcome of the compensatory damages portion of the case.

{¶ 16} On April 5, 2016, the parties appeared in court for the scheduled jury trial. Prior to trial, the court presented its ruling on all outstanding motions, including HCR's motion in limine, which was overruled in part and sustained in part. The court also dismissed the nursing home administrator from the action. As the court attempted to bring the jurors into the courtroom, HCR's counsel told the court that HCR wanted to place an admission into the record. The admission, which had not been previously disclosed to the trial court or counsel, was that HCR would admit liability for Donald's wrongful death, leaving damages as the only issue left for decision.

{¶ 17} After accepting the admission, the court continued the trial, and also let Howard file a memorandum concerning how the admission affected Howard's survival claims, which Howard still contended should be allowed. In late May 2016, the court overruled Howard's motion as it related to the survival claims. The court concluded that even though HCR had adopted inconsistent positions concerning whether the corporate

defendants were medical providers, the court would follow its understanding of the law, which indicated that these defendants were medical providers under R.C. 2305.113(E)(3).

{¶ 18} On September 27 and 28, 2016, the case was tried before a jury on the issue of damages only. After a brief deliberation, the jury returned a total verdict of $1,100,000 against HCR. Shortly after the judgment on the verdict was entered, Howard filed a motion for prejudgment interest. Before that issue was decided, HCR filed a notice of appeal, and we docketed the appeal as Case No. 16-CA-75.

{¶ 19} On December 6, 2016, Howard filed a motion to remand the case because the trial court had not yet held an evidentiary hearing on the motion for prejudgment interest. We remanded the case on December 28, 2016, and stayed the appellate proceedings pending a decision on the motion. On January 12, 2017, the trial court filed a notice of a non-oral hearing to be held on January 26, 2017. Although Howard filed a motion to continue the hearing in order to conduct discovery, the court declined to continue the hearing. The court then overruled the motion for prejudgment interest on January 30, 2017.

{¶ 20} Howard filed a notice of cross-appeal after this judgment, and we docketed the appeal as Case No. 17-CA-16. We consolidated the two appeals on May 11, 2017. We also concluded that Howard's time for appeal had been tolled due to the filing of the motion for prejudgment interest, and that Howard was entitled to cross-appeal from the judgement on the jury verdict that was entered in October 2016.

## II. Motion for Judgment on the Pleadings

{¶ 21} HCR's First Assignment of Error states that:

The Trial Court Erred by Failing to Grant HCR Judgment on the Pleadings on the Wrongful Death Claims.

{¶ 22} Under this assignment of error, HCR contends that the trial court erred by failing to grant the motion for judgment on the pleadings that was filed in connection with the wrongful death claims. HCR's argument is based on the contention that Howard's Civ.R. 10(D)(2) affidavit was legally insufficient because Howard's nurse practitioner expert was not legally competent to testify as to the cause of Howard's death. As was noted, HCR filed a motion for judgment on the pleadings in late May 2015, and the trial court overruled the motion in June 2015. The court did not provide any reasoning for its decision.

{¶ 23} Because motions for judgment on the pleadings present only questions of law, we review them on a de novo basis. *See, e.g., Discover Bank v. Swartz*, 2016-Ohio-2751, 51 N.E.3d 694, ¶ 11 (2d Dist.). De novo review mandates an independent decision, without deference to a trial court's determination. (Citations omitted.) *Portfolio Recovery Assocs., L.L.C. v. VanLeeuwen*, 2d Dist. Montgomery No. 26692, 2016-Ohio-2962, ¶ 6.

{¶ 24} The parties do not dispute that the wrongful death claims were "medical claims" under R.C. 2305.113. In such situations, Civ.R. 10(D)(2) provides, in pertinent part, that:

(a) Except as provided in division (D)(2)(b) of this rule, a complaint that contains a medical claim, * * * as defined in R.C. 2305.113, shall be accompanied by one or more affidavits of merit relative to each defendant named in the complaint for whom expert testimony is necessary to establish

liability. Affidavits of merit shall be provided by an expert witness meeting the requirements of Evid.R. 702 and, if applicable, also meeting the requirements of Evid.R. 601(D). Affidavits of merit shall include all of the following:

(i) A statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;

(ii) A statement that the affiant is familiar with the applicable standard of care;

(iii) The opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.

\* \* \*

(d) An affidavit of merit is required to establish the adequacy of the complaint and shall not otherwise be admissible as evidence or used for purposes of impeachment. Any dismissal for the failure to comply with this rule shall operate as a failure otherwise than on the merits.

(e) If an affidavit of merit as required by this rule has been filed as to any defendant along with the complaint or amended complaint in which claims are first asserted against that defendant, and the affidavit of merit is determined by the court to be defective pursuant to the provisions of division (D)(2)(a) of this rule, the court shall grant the plaintiff a reasonable time, not to exceed sixty days, to file an affidavit of merit intended to cure the defect.

**{¶ 25}** The Supreme Court of Ohio has said that "the purpose behind the rule is to deter the filing of frivolous medical-malpractice claims. The rule is designed to ease the burden on the dockets of Ohio's courts and to ensure that only those plaintiffs truly aggrieved at the hands of the medical profession have their day in court." *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 10.

**{¶ 26}** Currently, there is some disagreement among Ohio courts concerning whether a nurse's affidavit is sufficient to withstand a challenge under Civ.R. 10(D)(2). *Compare Tranter v. Mercy Franciscan Hosp. W. Hills*, 1st Dist. Hamilton No. C-061039, 2007-Ohio-5132, ¶ 11 [yes – because while nursing expert was "arguably" not competent to establish that injuries had caused decedent's death, she was qualified to state that "nurses' alleged breach of duty had 'caused injury to the plaintiff' within the meaning of Civ.R.10(D)(2)(iii)"], with *Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 42-48 (no – but a trial court errs if it grants summary judgment on this point and dismisses an action without providing the plaintiff with an opportunity to cure the defect).

**{¶ 27}** In *Chalmers*, the plaintiff brought suit against a nursing home and related corporations based on injuries and death caused to a nursing home resident. Like the case before us, the trial court held that the survivorship claims were time-barred, and the only other potential claims were for wrongful death. *Id.* at ¶ 19 and 44. The majority opinion in *Chalmers* concluded that the trial court erred in granting summary judgment on the wrongful death claims without allowing the plaintiff an opportunity to cure the defect in the affidavit of merit. In addition, the majority observed that the opportunity to cure "is not conditioned upon the competency of the original affiant, nor does the rule demand

that the affiant in the supplemental affidavit be the same affiant as in the original affidavit." *Id.* at ¶ 49. Thus, the plaintiff would be "permitted to cure the defective affidavit of merit by securing a new affidavit of merit from a competent expert that includes the missing causation testimony." *Id.*

**{¶ 28}** One judge on the panel agreed that the summary judgment decision in favor of the nursing home on the wrongful death claims should be reversed. However, she also concluded that Civ.R. 10(D)(2) did not apply to the summary judgment motion. *Chalmers* at ¶ 53 (Mayle, J., concurring and dissenting). Judge Mayle noted that the defendants failed to filed a Civ.R. 12(B)(6) motion to dismiss, which was the appropriate course under *Fletcher*. *Id.* at ¶ 65-66, citing *Fletcher*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, at paragraph one of the syllabus.

**{¶ 29}** Instead of filing a motion to dismiss, the defendants filed a summary judgment motion. Judge Mayle commented that Civ.R. 10(D)(2) specifically states that affidavits of merit are only to be used to test a complaint's adequacy; they may not be admitted as evidence or used for impeachment. *Id.* at ¶ 65. In this regard, Judge Mayle stressed that:

> Appellees did not file a Civ.R. 12(B)(6) motion to dismiss; they filed a Civ.R. 56 motion for summary judgment. At the summary judgment phase of a wrongful death case, the relevant inquiry with respect to causation should be whether the plaintiff put forth admissible evidence, including expert testimony if required, to establish that the defendant proximately caused the injury and, ultimately, death. But appellees moved for summary judgment – and the trial court granted the motion – for the sole

reason that the Civ.R. 10(D)(2) affidavit of merit, attached to the complaint, lacked expert testimony regarding cause of death. Even if that somehow caused the pleading to be deficient, it was not a basis to grant summary judgment. By doing so, the court wholly ignored the actual evidence in the record – including deposition testimony from appellant's physician expert and the coroner's death certificate and autopsy report – that may or may not have been sufficient to withstand summary judgment on the issue of causation. That is where the focus should have been under Civ.R. 56.

*Chalmers*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, at ¶ 66 (Mayle, J., concurring and dissenting).

{¶ 30} We need not take a position on any conflict among districts, due to the procedural posture of this case. As was noted, HCR filed a motion for judgment on the pleadings, which was overruled. Even if the trial court had concluded that the affidavit of merit was deficient, the proper remedy under Civ.R. 10(D)(2)(e) would have been to give Howard an opportunity to cure the defect, not to grant a motion for judgment on the pleadings. Furthermore, under *Chalmers*, Howard would not have been restricted to the affidavit of a nurse or the same nurse; he could have provided an affidavit from another expert to establish causation for wrongful death.

{¶ 31} In light of the above discussion, the trial court did err in overruling HCR's motion rather than (1) deciding if the affidavit was defective, and (2) if a defect existed, providing Howard with a chance to cure the defect. As a result, the relevant issue would be whether the error prejudiced HCR. In this regard, several points are in order.

{¶ 32} As an initial matter, we note that HCR filed a motion in limine shortly before

the trial that was scheduled for April 5, 2016. The motion sought to limit the testimony of Howard's nurse expert because she was allegedly not qualified to render medical diagnoses or causation opinions. Notably, HCR mentioned in the motion that Howard had designated Dr. Fannin (a medical doctor) as an expert witness. Attached to the motion was a designation of experts that Howard had provided. This designation disclosed Dr. Fannin as an expert and outlined his testimony.

{¶ 33} Among other things, Dr. Fannin intended to testify that HCR failed to provide Donald " 'with care commensurate with the appropriate minimum standards of care, and that [HCR's] negligence and other culpable conduct resulted in painful injuries to [Donald] and substantially contributed to his death." *See* Doc. #231, Motion of Defendants HCR ManorCare, Inc., et. al., for Summary Judgment as to Plaintiff's Allegations Seeking Punitive Damages, and Ex. A (Howard's Designation of Expert Witnesses), p. 2, which is attached to HCR's Motion.[2] These matters were not part of the pleadings, however, and have not been considered in ruling on HCR's assignment of error.

{¶ 34} Instead, the critical point is that by admitting liability for Donald's death, HCR waived its ability to assert the alleged Civ.R. 10(D)(2) deficiency, and also precluded any ability to assert error in connection with the trial court's failure to grant the motion challenging the affidavit of merit. " 'Waiver' is defined as a voluntary relinquishment of a known right." (Citations omitted). *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 435, 732 N.E.2d 960 (2000).

{¶ 35} As was noted, the jury trial was initially scheduled for April 5, 2016.

---

[2] Howard apparently first consulted Dr. Fannin in May 2015, and HCR deposed Dr. Fannin in March 2016. *See* Doc. #258, Deposition of Dr. William Fannin, pp. 1-3. The record does not clearly indicate when Dr. Fannin was first identified as an expert.

However, as the court began to call in the jury, HCR's counsel told the court that HCR wished to admit liability. *See* Transcript of April 5, 2016 Proceedings, Doc. #308, p. 8. HCR's counsel then placed an admission into the record, and the court signed an order accepting the admission. *Id.* at pp. 9-11 and 31, and Doc. #303, Order, filed on April 6, 2016. HCR's admission was also filed on October 6, 2016, and provides, in pertinent part, as follows:

> In light of this Court's *Entry* filed March 31, 2016, wherein the Court dismissed Counts 1, 3, and 4 of *Plaintiff's Second Amended Complaint* (the "survival claims"), and as the sole remaining claim in this proceeding is for the alleged wrongful death of Donald Lee Howard pursuant to R.C. § 2125.01, the remaining Defendants HCR ManorCare, Inc., HCR Manor Care Services, Inc., Heartland Employment Services, LLC, and Heartland of Springfield OH, LLC admit that an act or omission of one or all of these Defendants was a cause of Donald Lee Howard's death as set forth in R.C. § 2125.01.
>
> Pursuant to the foregoing admission, the issues remaining in dispute in this matter are whether and, if so, to what extent any person defined by R.C. § 2125.02 sustained damage as set forth in R.C. § 2125.02 as a result of the death of Donald Lee Howard.

(Italics sic.) Doc. # 304, Admission of Defendants HCR ManorCare, Inc., HCR Manor Care Services, Inc., Heartland Employment Services, LLC, and Heartland of Springfield OH, LLC as to Plaintiff's Wrongful Death Claim Only, pp. 1-2.

{¶ 36} Despite this admission, HCR now argues that the judgment in Howard's

favor should be reversed because some courts have found that Civ.R. 10(D)(2) is jurisdictional. The point of this argument (although HCR does not explicitly say so) is to escape the effect of HCR's admission, apparently on the theory that "a court's subject matter jurisdiction cannot be waived." *State v. Wilson*, 73 Ohio St.3d 40, 46, 652 N.E.2d 196 (1995). *Accord NVR, Inc. v. Centerville*, 2016-Ohio-6960, 71 N.E.3d 745, ¶ 21 (2d Dist.).

{¶ 37} HCR's position is not persuasive. HCR chose to admit that the actions of one or more of the defendants caused Donald's death and that the only issue to be decided was the extent of damages, if any, sustained. Presumably, the point of the admission was to benefit HCR in some way. However, after a jury verdict was awarded for an injury HCR admitted causing, HCR now attempts to avoid the effect of its admission.

{¶ 38} HCR failed to cite any Ohio appellate cases to support a jurisdictional argument; instead, HCR relies on two federal district court cases and one Ohio common pleas court case. One of these cases is *Bush v. Secy. of Dept. of Veterans Affairs*, S.D. Ohio No. 1:13-CV-76, 2014 WL 127092 (Jan. 13, 2014). However, contrary to HCR's assertion, *Bush* does not indicate that the affidavit of merit in Civ.R. 10(D)(2) is required for a court to retain subject matter jurisdiction over an action.

{¶ 39} In *Bush*, a pro se litigant had filed a claim against the Cincinnati Veterans Administration Medical Center, alleging that the Center failed to diagnose the severity of his hearing impairment. He did not attach a Civ.R. 10(D)(2) affidavit to his complaint. *Id.* at *7. One of several issues before the court was whether Ohio's procedural rule should be applied as substantive law under the Federal Tort Claims Act, because the

federal rules do not require affidavits of merit. *Id.* at *7-8. The court noted that disagreement existed in the Sixth Circuit concerning whether Ohio's Civ.R. 10(D)(2) is procedural or substantive. (Citations omitted.) *Id.* at *8. Ultimately, the court concluded that the rule was substantive and applied it to the plaintiff's medical claims. *Id.* Because the plaintiff had failed to file an affidavit of merit, the court concluded that the defendant's motion to dismiss should be granted. *Id.*

{¶ 40} The fact that a procedural rule is found to be substantive for purposes of applying state law in a federal action does not mean that satisfaction of the rule is required for a court to have subject matter jurisdiction. In fact, the text of Civ.R. 10(D)(2)(d) indicates otherwise, by stating that "[a]n affidavit of merit is required to establish the *adequacy of the complaint* * * *." (Emphasis added.)

{¶ 41} The other federal case HCR cites is *McCain v. Parks*, S.D. Ohio No. 2:10-CV-00791, 2011 WL 4398096 (Sept. 21, 2011). Again, the federal district court did not hold that failure to file an affidavit of merit deprives a court of subject matter jurisdiction. In discussing the background facts, the district court noted that the plaintiff, an Ohio prisoner, had previously filed a claim with the Ohio Court of Claims, and that his claim had been dismissed without prejudice because he failed to file an affidavit of merit. *Id.* at *3. In addition, the Ohio Court of Claims had dismissed the plaintiff's Eighth Amendment claim for cruel and unusual punishment, concluding that it lacked subject matter jurisdiction over that type of claim. *Id.*

{¶ 42} After making these remarks, the district court stated that "[o]n July 28, 2010, plaintiff filed a second complaint with the Ohio Court of Claims based on the same allegations contained in the February 26, 2010 complaint. On September 20, 2010, the

court [of claims] dismissed plaintiff's second complaint for failing to attach an affidavit of merit and for lack of subject matter jurisdiction." *Id.* at *3. Presumably, this is the comment on which HCR's "jurisdictional" argument is based. However, the court's meaning is not clear.

**{¶ 43}** From reading the case, it appears that plaintiff may have simply refiled the previous action, including the same claims, that had been dismissed by the court of claims, meaning that the jurisdictional comment related to the Eighth Amendment claim rather than the failure to file an affidavit of merit. This makes sense, since the court of claims had previously dismissed the Eighth Amendment claim due to lack of jurisdiction. In addition, the federal court specifically commented that the second complaint contained the "same allegations." *McCain*, S.D. Ohio No. 2:10-CV-00791, 2011 WL 4398096, at *3.

**{¶ 44}** HCR did not attach the underlying decisions of the court of claims to its brief, and we have been unable to locate them in our online research system. As a result, we cannot reach any definite conclusion about the meaning of the statement in *McCain*, other than it was simply part of a recitation of factual background in the state court system. What is clear, however, is that the federal district court did not hold that failing to attach a Civ.R. 10(D)(2) affidavit of merit results in a lack of subject matter jurisdiction.

**{¶ 45}** As for the common pleas court case cited by HCR, this case also was not attached to HCR's brief, and we have been unable to locate it through our online research system. Nonetheless, even if we could locate the case, and even if HCR's representation of the holding is accurate, we disagree that failing to attach a Civ.R. 10(D)(2) affidavit deprives a court of subject matter jurisdiction.

{¶ 46} " 'Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits' and 'defines the competency of a court to render a valid judgment in a particular action.' " *Cheap Escape Co. v. Haddox, LLC*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 6, quoting *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972). In *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, the Supreme Court of Ohio also stressed that:

Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases. * * * A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case. * * * A court's jurisdiction over a particular case refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction. * * * This latter jurisdictional category involves consideration of the rights of the parties. If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void.

(Citations omitted.) *Id.* at ¶ 19.

{¶ 47} The Supreme Court of Ohio has not specifically addressed Civ.R. 10(D)(2) in a subject matter jurisdiction context, but the court did note in *Fletcher* that the rule is intended to "deter the filing of frivolous medical malpractice claims," and that Civ.R. 10(D)(2) makes "it clear that the affidavit is necessary in order to 'establish the adequacy of the complaint.' " *Fletcher*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, at ¶ 10, quoting from Civ.R. 10(D)(2)(c) [now Civ.R. 10(D)(2)(d)]. As was noted, this is not

a statement indicating that failure to attach an affidavit results in a lack of lack of subject matter jurisdiction. To the contrary, such a failure results only in a dismissal without prejudice. *Id.* at paragraph two of the syllabus.

{¶ 48} The Supreme Court of Ohio has also said that the failure to attach an affidavit is a "pleading deficiency" that "can be cured without automatic dismissal of a complaint * * *." *Manley v. Marsico*, 116 Ohio St.3d 85, 2007-Ohio-5543, 876 N.E.2d 910, ¶ 14 [analogizing Civ.R. 10(D)(2) to Civ.R. 10(D)(1)]. *See also Troyer v. Janis*, 132 Ohio St.3d 229, 2012-Ohio-2406, 971 N.E.2d 862, ¶ 10 (observing that the proper remedy where an affidavit of merit is not attached to a complaint is dismissal without prejudice and that "dismissal is not based on the merits of the case, but on the insufficiency of the complaint").

{¶ 49} Notably, the failure alleged here is that the affidavit was defective; it is not that Howard failed to attach an affidavit. As we said, a defective affidavit would not require dismissal of the action. Instead, the court would have been required to give Howard time to cure any defects.

{¶ 50} We should also note that a prior statute relating to medical claims and the requirement of affidavits to accompany a complaint specifically stated that "[a] municipal court, county court, or court of common pleas, or the court of claims, *shall have jurisdiction* to hear and determine an action upon a medical, dental, optometric, or chiropractic claim *only if* the complaint or other pleading that sets forth the claim is supported by documentation as required by and described in division (C) of this section." (Emphasis added.) *See* former R.C. 2307.42(B), as codified in Am.Sub.H.B. No. 642, 1988 Ohio Laws File 284.

{¶ 51} In 1994, the Supreme Court of Ohio invalidated this statute, stating that the affidavit requirement directly conflicted "with the express provision of Civ.R. 11 that '[e]xcept when otherwise specifically provided by these rules, pleadings need not be verified or accompanied by affidavit.' " *Hiatt v. S. Health Facilities, Inc.*, 68 Ohio St.3d 236, 238, 626 N.E.2d 71 (1994). The court further stated that "[s]ince the conflict involves the form and content of the complaint to initiate a medical malpractice case, it is a procedural matter and, therefore, Civ.R. 11 prevails over the statute, R.C. 2307.42." *Id.*

{¶ 52} A further iteration enacted in 1997 as R.C. 2305.011 required a "certificate of merit." This statute fared poorly as well, because the Supreme Court of Ohio invalidated it in 1999. *See State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999) (invalidating Am.Sub.H.B. 350). In *Sheward*, the court noted that when R.C. 2305.011 was enacted, the legislature had expressed its intent to respond to *Hiatt* by " 'by clarifying the jurisdictional nature of certificate of merit requirements and creating a substantive requirement for medical, dental, optometric, chiropractic, and malpractice claims.' " *Id.* at 479, quoting Am.Sub.H.B. No. 350, Section 5(H)(1), 146 Ohio Laws, Part II, 4024.[3]

{¶ 53} In response to the legislature's statement of intent, the Supreme Court said that:

> The notion that the General Assembly can direct our trial courts to

---

[3] The legislature's statement of intent also indicated that "trial courts lose subject matter jurisdiction to hear medical, dental, optometric, chiropractic, and malpractice claims defined or described in section 2305.11 of the Revised Code unless they are supported by certificates of merit * * *." Am.Sub.H.B. No. 350, Section 5(H)(2), 146 Ohio Laws, Part II, 4024.

apply a legislative rule that this court has already declared to be in conflict with the Civil Rules simply by denominating it "jurisdictional" or "substantive" is so fundamentally contrary to the principle of separation of powers that it deserves no further comment. Moreover, the General Assembly has clarified nothing by expressing its view that certificate-of-merit requirements are jurisdictional in nature. Former R.C. 2307.42(B) specifically provided that trial courts "shall have *jurisdiction* to hear and determine an action upon a medical, dental, optometric, or chiropractic claim *only if* the complaint or other pleading that sets forth the claim is supported by" an affidavit of merit. (Emphasis added.) The fact that the General Assembly views certificate-of-merit requirements as something other than procedural is nothing new, and it certainly adds nothing to its claim of clarification that the term "jurisdiction" was used in former R.C. 2307.42, but appears nowhere in R.C. 2305.011(B).

(Emphasis sic.; footnote omitted.) *Sheward* at 479.

**{¶ 54}** Subsequently, the legislature repealed R.C. 2305.011 and revived and amended R.C. 2305.11. *See* S.B. No. 108, 2001 Ohio Laws File 26. R.C. 2305.11 as revived and amended included statutes of limitations for medical actions, but did not mention affidavits or certificates of merit. *Id.*

**{¶ 55}** In 2002, R.C. 2305.113 was enacted, but it did not include any references to affidavits or certificates of merit. *See* S.B. No. 281, 2002 Ohio Laws File 250, effective in April 2003. In 2004, the legislature enacted R.C. 2323.45, which allows health care providers named as defendants in actions involving medical claims to file motions for

dismissal based on non-involvement. *See* Sub.H.B. No. 215, 2004 Ohio Laws 93. As part of this bill, the legislature asked the Supreme Court of Ohio to amend the Ohio Civil Rules to require plaintiffs to include a certificate of expert review for each defendant in cases where plaintiffs file medical liability claims. *Id.* at Section 3.

{¶ 56} In 2005, the Supreme Court of Ohio amended Civ.R. 10 in response to the General Assembly's request. *See* 2005 Staff Notes to Civ.R. 10. The court, thus retitled and reorganized Civ.R. 10(D) "to reflect the inclusion of a requirement in division (D)(2) that a medical liability complaint include an affidavit of merit concerning the alleged breach of the standard of care by each defendant to the action." *Id.* Civ.R. 10(D) was amended again in 2007 "to define the effect of dismissal for failure to comply with the affidavit of merit requirement" and to add a "new section" allowing a reasonable time, not to exceed 60 days, for curing defects identified in affidavits. *See* 2007 Staff Notes to Civ.R. 10.

{¶ 57} In none of these revisions did the Supreme Court of Ohio indicate that the failure to comply would deprive a court of subject matter jurisdiction. To the contrary, including such language would be inconsistent with the court's prior decisions. In fact, the court's notes to the final rule amendment of Civ.R. 10 in 2007 specifically state that "[t]he revisions also remove language initially proposed which made the affidavit requirement a prerequisite to the trial court's exercise of jurisdiction, but retains the proposed language that clarifies that a dismissal for failure to comply with the rule operates as a failure otherwise than on the merits." *See* http://www.supremecourt.ohio.gov/RuleAmendments/Archive.aspx. Thus, at no point, has the Supreme Court expressed intent to make the requirements in Civ.R. 10(D)(2)

jurisdictional.

{¶ 58} Furthermore, the current statute pertaining to medical claims (R.C. 2305.113) is contained in a section of the Ohio Revised Code entitled "Limitations – Miscellaneous." The statute itself is entitled "Time limitations for bringing medical, dental, optometric, or chiropractic claims." *See* R.C. 2305.113. R.C. Chap. 2305, itself, is entitled "Jurisdiction; Limitation of Actions", indicating that the legislature is aware of the distinction between jurisdiction and statutes of limitation.

{¶ 59} As a final matter, the Supreme Court of Ohio noted in an arbitration case that a nursing home had waived its right under an arbitration agreement to seek dismissal under Civ.R. 10(D)(2). *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 39. Although the court did not discuss subject matter jurisdiction, it stated, in upholding the agreement, that "both parties relinquished legal rights by agreeing to arbitration." *Id.* at ¶ 40. According to the court, one of these legal rights was the nursing home's "right to seek * * * an outright dismissal of the case." *Id.* Because subject matter jurisdiction cannot be waived, the court would not have relied on wavier if it felt the requirements in Civ.R. 10(D)(2) were jurisdictional.

{¶ 60} The point of this discussion is that a defect in an affidavit, or even a failure to file the affidavit, does not deprive a court of subject matter jurisdiction. Accordingly, we conclude that by admitting liability for Donald's injuries, HCR waived the right to challenge the trial court's ruling on the motion for judgment on the pleadings and is precluded from raising this error on appeal. By the same token, even if we had to consider this issue under a plain error analysis (which we do not), any error would have been harmless, as Howard was entitled to a continuance to cure the defect.

{¶ 61} Based on the preceding discussion, HCR's First Assignment of Error is overruled.

### III.   Jury Verdict Form

{¶ 62} HCR's Second Assignment of Error states that:

The Trial Court Erred by Submitting to the Jury a Verdict Form Contrary to Statutory Law.

{¶ 63} Under this assignment of error, HCR contends that the trial court committed error in instructing the jury.   HCR's first point is that the court improperly allowed the jury to consider individual damage awards to wrongful death beneficiaries who were not parties to the action.   According to HCR, this permitted the trial court to usurp the function of the probate court, which has the duty to allocate damages among the beneficiaries. In responding to this argument, Howard contends that HCR waived any error by failing to object.   Additionally, Howard maintains that the procedure the trial court followed was proper.

{¶ 64} R.C. 2125.02(A)(1) provides that wrongful death actions "shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."   Consistent with this statute, the action against HCR was brought by Howard, as the personal representative of the other wrongful death beneficiaries.   The beneficiaries were Donald's three adult children: Howard, Guy Steven Howard, and MaryAnn Hayes.

{¶ 65} R.C. 2125.03(A)(1) provides that:

The amount received by a personal representative in an action for wrongful death under sections 2125.01 and 2125.02 of the Revised Code, whether by settlement or otherwise, shall be distributed to the beneficiaries or any one or more of them. The court that appointed the personal representative, except when all of the beneficiaries are on an equal degree of consanguinity to the deceased person, shall adjust the share of each beneficiary in a manner that is equitable, having due regard for the injury and loss to each beneficiary resulting from the death and for the age and condition of the beneficiaries. If all of the beneficiaries are on an equal degree of consanguinity to the deceased person, the beneficiaries may adjust the share of each beneficiary among themselves.   If the beneficiaries do not adjust their shares among themselves, the court shall adjust the share of each beneficiary in the same manner as the court adjusts the shares of beneficiaries who are not on an equal degree of consanguinity to the deceased person.

{¶ 66} On April 4, 2016, or just prior to the first scheduled trial, HCR filed proposed jury instructions and interrogatories.   *See* Doc. #270.   One interrogatory ("C") asked the jury to find what money would reasonably compensate Howard's next of kin for Donald's death.   Also included were general verdict forms finding either for HCR or the plaintiff. The latter verdict form contained a space to insert a money amount.   Interrogatory C instructed the jury that the amount found on the interrogatory must match the amount assigned to the plaintiff on the general verdict form.

{¶ 67} As was noted, HCR conceded liability on the April 5, 2016 trial date, and on September 27-28, 2016, a jury trial was held on the issue of damages only.   On September 20, 2016, HCR filed proposed jury instructions, a verdict sheet, and jury interrogatories.   *See* Doc. #425.   Proposed interrogatory C was the same as the prior interrogatory C, and the general verdict for plaintiff included separate lines for compensatory damages and funeral and burial expenses.   HCR filed amended and supplemental jury instructions on September 26, 2016, but the relevant interrogatory and verdict form were the same as those submitted on September 20, 2016.   *See* Doc. #430.

{¶ 68} On September 28, 2016, HCR filed yet another amended set of proposed instructions.   The interrogatory in question remained the same but was renumbered B, and the line for funeral and burial expenses was omitted from the general verdict form. *See* Doc. #442.   In the meantime, Howard had submitted jury interrogatories and a verdict form, asking the jury to find losses necessary to compensate Donald's family for his death.   The interrogatories and verdict form separated the three beneficiaries and asked the jury to find an amount for each beneficiary for two items: (1) the loss of society and companionship of Donald: and (2) the beneficiary's own mental anguish. *See* Doc. #438.

{¶ 69} On September 28, 2016, HCR filed objections to Howard's proposed jury instructions.   *See* Doc. #445.   Among other things, HCR objected to the fact that Howard had separated each beneficiary, and had asked that their damages be assessed collectively by the jury.   The record is unclear concerning whether the trial court saw these objections, as the court did not specifically mention HCR's objections during its discussion of the proposed instructions.   *See* Transcript of Proceedings, Vol. II, pp. 236-

237.   However, after the jury was instructed, the court did rule against Howard on two other points that HCR had raised.

{¶ 70} While discussing the proposed instructions, the court said it was going to accept Howard's proposed instructions with a few modifications.   The court further said that it would use the supplemental jury interrogatories and verdict form.   At that point, the court instructed that the jurors be brought into the courtroom.   The following exchange then occurred:

> MR. MEEKS [HCR's Counsel]:   Your Honor, did you issue rulings on the defendants [sic] proposed?
>
> THE COURT:   Yes, I'm going with plaintiffs, so that's it.

*Id*. at p. 237.

{¶ 71} HCR did not object at this point, nor did it say anything more.   After the jury was instructed, HCR approached the court and noted that it maintained its objection to all jury instructions Howard had proposed and its objections to the instructions that were given.   HCR then mentioned two instructions specifically – (1) that HCR was entitled to an instruction that the verdict was not subject to taxation and (2) that the court should give an instruction that sympathy and emotion were not to play a factor.   *Id*. at p. 301. Subsequently, the court gave these requested instructions to the jury.

{¶ 72} After the discussion of these two specific objections, the following exchange occurred:

> MR. ANSPACH [HCR's Counsel]:   The final thing, *with regard to the verdict form and what the jury needs to do, you are absolutely right in everything you said*, but I think I'm pretty sure you can't have six jurors who

give the number for Maryann and then four who give the number with two others for Guy and then three –

All I'm saying, Judge, is I believe there have to be at least six of the same jurors who answer each of those questions; otherwise, it's not a six percent [sic] verdict as a whole.

So I wanted to raise that error also. I would request the instruction that at least six of the same people must answer each of those questions. It can be eight. It can be seven. But at least six of the jurors have to answer each of them.

THE COURT: Do you agree?

MR. REINS [Howard's Counsel]: Do you have authority for that?

MR. ANSPACH: No. Frankly, I thought of it as we were – as you were going through the verdict form. You don't have a six-person verdict. There is only one plaintiff. *I understand the reason for breaking it down.* I mean, I think our request was just award X dollars to plaintiff. That's what the statute requires.

There is only one award that is allowed. *You accepted plaintiffs which requested to be broken down among the three. If that's going to happen in order to be – for it to be an appropriate verdict, at least six of the eight and the yeah, the same six of the eight have to answer each –*

MR. REINS: I understand that. I was asking if you have authority.

MR. ANSPACH: My authority is there's not a verdict.

MR. REINS: I didn't think that your verdict forms had that

instruction.

MR. ANSPACH:  I thought ours was just how much do you award in favor of the plaintiff,

* * *

MR. REINS:  * * * Now, in the absence of authority, that is not my understanding of the law, that it has to be the same six people. * * *

MR. ANSPACH:  The same six people have to agree on a verdict.

THE COURT:  Yes. I am kind of leaning that way.  My understanding is that you have a general verdict and then the interrogatories are kinda [sic] broken down; but *the interrogatories in and of themselves are not a verdict, I don't believe.  It's just a way of breaking down the findings of the jury* so I do believe all six –

MR. REINS:  Okay.

THE COURT:  -- have to be the same six –

MR. REINS:  At least.

THE COURT:  -- At least the same six.

MR. ANSPACH:  And actually what I've done in the past you have the verdict form which is we award X dollars and then you might have five interrogatories and I know the law is if there is inconsistency between the interrogatory answers and the jury verdict form * * * I have had cases where the jury deliberates; the interrogatory answers takes [sic] precedence over the jury verdict forms so for safety's sake for everybody –

MR. REINS:  Okay.

MR. ANSPACH:    -- I think you need to go over that.

THE COURT:    All right.

MR. ANSPACH:    Thank you, sir.

Transcript of Proceedings, Vol. II, pp. 301-305.

**{¶ 73}** No further comments were made.   Following this discussion, the court instructed the jury that at least six jurors would have to agree on an amount, and that the same six jurors would have to agree with respect to all the beneficiaries.   *Id.* at 305-306.

**{¶ 74}** When the jury returned the interrogatories and verdict form, all eight members of the jury panel had agreed and signed with respect to the damages findings for all three beneficiaries.   *Id.* at pp. 307-308.   While the individual amounts found by the jury varied somewhat, the total amount was $1,100,000.   Subsequently, the court entered judgment of $1,100,000 against HCR and in favor of Howard on behalf of the wrongful death beneficiaries.   *See* Doc. #447.

**{¶ 75}** As was noted, Howard contends that HCR waived objections to the instructions by failing to object.   Civ.R 51 provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."   The Supreme Court has stressed that "failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal."   (Citations omitted.)   *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

**{¶ 76}** After considering the record, we conclude that HCR, whatever its prior objections were, agreed with the interrogatories and verdict form, and is precluded from

raising the issue on appeal. During the discussion among the parties and court, HCR told the court that everything the court had said was "absolutely right" and that HCR understood why the court had broken down the damages. From these comments, one could not reasonably conclude that HCR was actually objecting to the interrogatories and verdict form. Rather than disagreeing with the court's choice, HCR's concern was that all the individual interrogatories be signed by at least six of the same jurors. The trial court agreed and instructed the jurors to do this. Notably, the verdict was unanimous, with all eight members of the panel agreeing.

{¶ 77} As a result, waiver does not even apply, since HCR agreed with the court. Even if this were otherwise, and we were to consider the matter on the basis of plain error, we find no error, let alone, plain error.

{¶ 78} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss*, 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.

{¶ 79} According to HCR, the trial court interfered with the jurisdiction of the probate court, which is entrusted with deciding the amount wrongful death beneficiaries are to receive. It is true that R.C. 2125.03(A)(1) indicates that the court who appointed the personal representative is to adjust the share of each beneficiary in an equitable manner. An exception is made where all the beneficiaries are "on an equal degree." *Id.*

{¶ 80} In this case, there were three beneficiaries, who as children of the decedent,

stood on "an equal degree of consanguinity to the deceased person." *Id.* In this situation, the beneficiaries may adjust their own shares. If they do not, "the court shall adjust the share of each beneficiary in the same manner as the court adjusts the shares of beneficiaries who are not on an equal degree of consanguinity to the deceased person."

{¶ 81} Thus, the probate court may not even need to be involved in an adjustment. However, even if the probate court's intervention among beneficiaries is required, the trial court's judgment did not interfere, because the court entered judgment in favor of the appointed representative in an amount ($1,100,000), that reflected the total of the sums calculated by the jury. HCR fails to suggest how this was prejudicial, other than saying that the trial court created the potential for inconsistent verdicts. However, the trial court entered a verdict for the representative in the total amount; it did not enter judgment in favor of individual beneficiaries.

{¶ 82} The Fifth District Court of Appeals rejected a similar argument in *Dean v. All. Obstetrics, Inc.*, 5th Dist. Stark No. CA-8885, 1993 WL 35673 (Jan. 28, 1993). There, the trial court awarded the personal representative a total amount of $1,004,510.46. *Id.* at *1. The jury had answered an interrogatory requiring it to itemize the damages of various beneficiaries, and allocated various amounts to the decedent's husband, child, parents, and brother. *Id.* at *4. The total of these amounts equaled the amount awarded to the personal representative. *Id.* The Fifth District concluded that the jury's response did not impair the probate court's discretion in distributing wrongful death damages. In this regard, the court stated that "[t]here is a fundamental distinction between the distribution of the amounts awarded and the determination of damages from which the distribution is made. By submitting this interrogatory to the jury, the trial court

properly allowed the jury to perform its statutory function under R.C. 2125.02." *Id.* at *5.

{¶ 83} We agree. *Dean's* conclusion is consistent with R.C. 2125.02(A)(2), which states that a jury "may award damages authorized by division (B) of this section, as it determines are proportioned to the injury and loss resulting to the beneficiaries described in division (A)(1) of this section by reason of the wrongful death * * *." Again, so long as the total judgment is entered in favor of the decedent's personal representative, it is hard to fathom how any interference with the probate court would occur.

{¶ 84} HCR's second argument under this assignment of error is that the jury also split damages into two components – mental anguish and loss of consortium. [4] According to HCR, R.C. 2125.02(A)(2) does not allow a jury to award separate amounts; instead, the allocation of damages is left to the probate court. Again, HCR did not object to this at trial. In fact, as indicated above, HCR agreed with the trial court.

{¶ 85} Assuming for the sake of argument that we were required to consider this issue on a plain error basis, we find no error, let alone the kind of error that requires reversal on a plain error basis.

{¶ 86} Nothing in R.C. 2125.02(A)(2) precludes a jury from considering separate elements of damages. *See Orren v. BWF Corp.*, 12th Dist. Warren No. CA2013-11-112, 2015-Ohio-62, ¶ 55 (noting that "while * * * Ohio's Wrongful Death statute does not

---

[4] Technically, the interrogatories listed "loss of companionship, attention, advice, guidance, and counsel," not "consortium." *See* Doc. #443. However, adult, emancipated children may recover for loss of parental consortium, which "may include services, society, companionship, comfort, love, guidance, and solace." (Citation omitted). *Rolf v. Tri State Motor Transit Co.*, 91 Ohio St.3d 380, 382, 745 N.E.2d 424 (2001). Consortium is also included in R.C. 2125.02(B)(3) as a loss of society suffered by surviving spouses, dependent children, parents, or the decedent's next of kin. Donald's adult children were his next of kin, as he had no surviving spouse. R.C. 2105.06(A).

expressly divide the possible compensatory damages into past and future categories, * * * the statute does not prohibit such a consideration of past and future damages").

{¶ 87} In *Orren*, jury interrogatories had considered separate items listed in the statute like loss of society and mental anguish, and the defendant argued that an interrogatory was impermissible because "it broke down the mental anguish and loss of love and other factors into categories to compensate for both past mental anguish/loss of love and future mental anguish/loss of love." *Id.* The court found the interrogatory proper, for the reason mentioned. *Id.* at ¶ 55-60. Although the real objection in *Orren* was to allowance of past and future mental anguish, the court, nonetheless, did not consider the interrogatory improper because it asked the jury to consider separate items of injury rather than simply asking a general question about "compensatory damages."

{¶ 88} As was noted, R.C. 2125.02(A)(2) states that the jury "may award damages authorized by division (B) of this section, as it determines are proportioned to the injury and loss * * *" suffered by the beneficiaries. The compensatory damages listed in R.C. 2125.02(B) include: "(1) Loss of support from the reasonably expected earning capacity of the decedent; (2) Loss of services of the decedent; (3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent; (4) Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death; and (5) The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent." There is no indication in the statute that a jury cannot consider separate items of damages, rather than lumping all damages together.

{¶ 89} As we mentioned before, HCR fails to illustrate how any possible prejudice occurred. Consistent with the statute, the court allowed the jury to consider the items listed in R.C. 2125.02(B)(3) and (5). Furthermore, for the reasons previously stated, the trial court did not interfere with the probate court's role. Accordingly, the Second Assignment of Error is overruled.

IV. Closing Argument

{¶ 90} HCR's Third Assignment of Error states that:

The Trial Court Erred by Failing to Cure the Unfairly Prejudicial and

Precluded Statements of Appellee's Counsel During Oral Argument.

{¶ 91} Under this assignment of error, HCR contends that the judgment must be reversed due to misconduct of Howard's counsel during closing argument. As background, HCR argues that it was persuaded to admit liability because the trial court had overruled its motion for judgment on the pleadings and had also overruled its motion in limine, which asked the court to prevent Howard from using the word "kill" during trial.

{¶ 92} HCR contends that the court subsequently reversed its prior decision on the use of the word "kill," based on HCR's admission of liability. In addition, HCR contends that despite the court's admonition that it did not want to hear arguments about the inadequacy of the nursing home, counsel for Howard improperly stated during closing argument that HCR had "killed" Donald. Based on these facts, HCR maintains that the court's refusal to sustain HCR's objection or to issue a curative instruction warrants a new trial.

{¶ 93} The Supreme Court of Ohio has acknowledged that "counsel should be

afforded great latitude in closing argument, * * * and that the determination of whether the bounds of permissible argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court * * *." (Citations omitted.) *Pesek v. Univ. Neurologists Assn., Inc.*, 87 Ohio St.3d 495, 501, 721 N.E.2d 1011 (2000). Consequently, "the trial court's determination will not be reversed absent an abuse of discretion." *Id.* "However, '[w]here *gross* and *abusive* conduct occurs, the trial court is *bound, sua sponte, to correct the prejudicial effect of counsel's misconduct.*' " (Emphasis sic.) *Id.*, quoting *Snyder v. Stanford*, 15 Ohio St.2d 31, 37, 238 N.E.2d 563 (1968).

{¶ 94} Our review of the record indicates that the trial court did not abuse its discretion. As an initial point, HCR's representation of the background relies on matters that are not found in the record, and are irrelevant in any event.

{¶ 95} On March 16, 2016, HCR filed a motion for judgment on the pleadings, asking the court to dismiss the survival claims in Counts One, Three, and Four of the Second Amended Complaint. The court granted this motion on March 31, 2016, leaving only wrongful death claims to be tried.

{¶ 96} As was noted, the jury trial on both liability and damages was initially scheduled for April 5, 2016. On March 28, 2016, HCR filed an "omnibus" motion in limine objecting to 27 matters. This was followed by 22 separate memoranda filed on March 31, 2016, which addressed the matters raised in the omnibus motion in limine. According to the discussion at the intended trial on April 5, 2016, none of these memoranda were served on Howard's counsel prior to trial. April 5, 2016 Transcript of Proceedings, p. 12. The trial court also indicated it had not seen any of HCR's motions until the day before the trial. *Id.* at p. 13.

**{¶ 97}** One liminal request asked the court to preclude Howard from using variations of the word "kill" when arguing the wrongful death claim. HCR argued that such use would be inflammatory and prejudicial. *See* Doc. #234, filed on March 31, 2016. On April 5, 2016, the court convened trial and began by issuing rulings on the various motions in limine that had been filed by both sides. Some were sustained and some were overruled. *Id.* at pp. 1-8. Among other things, the court overruled the motion in limine precluding arguments using the word "kill." *Id.* at p. 7. The court did not elaborate on its reasons for overruling the motion.

**{¶ 98}** After the court finished these rulings and asked for the jury to be brought in, HCR asked to put an admission into the record. HCR's counsel stated, in this regard that: "There is one thing that is important to put on the record with regard to issues in the trial that remain. *I was not able to do it until the trial began.*" (Emphasis added.) *Id.* at p.8. The following exchange then occurred:

Mr. Anspach [HCR's counsel]*: If I may just read this into the record and then I will supply it to Mr. Reins* [Howard's counsel].

The Court: Well, I'm not sure what it is.

Mr. Anspach: In light of this Court's –

The Court: I haven't given you permission to bring it into the record yet. What is it?

Mr. Anspach: On the wrongful death claims that remain in this case, the three claims that still remain, the defendants are prepared to admit liability so that the only issues that remain are damages.

The Court: Okay, you can proceed.

Mr. Anspach:  *I have an admission to that effect in a proposed order.*

The Court:   You can proceed.

Mr. Anspach:   Thank you.   And *we are prepared to file* and read into the record an admission of defendants * * * as to plaintiffs [sic] wrongful death claim only, which are the only claims remaining in the case after the Court's entry of March 31, 2016, dismissing the survival claims. * * *

(Emphasis added.)   April 5, 2016 Transcript of Proceedings, pp. 8-9.

**{¶ 99}** HCR's counsel then read the admission into the record.   He also stated that HCR was "lodging a proposed order" and read the proposed order into the record.  *Id.* at pp. 9-11.   At that point, the trial court asked Howard's counsel if the admission was acceptable to the plaintiff.   Howard's counsel noted that they "had been spending days designating depositions" with HCR's lawyers and coordinating and subpoenaing witnesses, and had "no clue" this was to happen.   *Id.* at p. 12.    After some further discussion, HCR's counsel stated:

The one other thing I would like to say with regard to the timing, and I would be candid with the court, as Mr. Lance Reins was.

This, in our opinion, could not be done until the commencement of trial because if it were done prior to commencement of trial, it would have left open the possibility, if Plaintiff chose, to do so a voluntary dismissal without prejudice and a re-filing starting all over, and so in order for this admission to take place effectively it needed to be made when the trial commenced and we got our first available moment for doing so.

*Id.* at p. 15.

**{¶ 100}** HCR's counsel also stated that "candidly, [HCR] could not even consider doing this [making the admission of liability] until [HCR] received the Court's order of March 31st, last Thursday, granting the motion for judgment on the pleadings regarding all the survival claims * * *." April 5, 2016 Transcript of Proceedings, p. 29.

**{¶ 101}** The above facts reveal that the admission of liability had nothing to do with the court's ruling on the motion in limine, because the court did not issue a ruling until the day of trial. Not being aware of what this ruling would be, HCR arrived with a written admission and proposed order, and had clearly contemplated the matter prior to the court's ruling.

**{¶ 102}** As background for this assignment of error, HCR also relies on an allegation that it was persuaded to admit liability because the trial court denied the Civ.R. 10(D)(2) motion for judgment on the pleadings. In this regard, we note the following facts. The case was originally filed in April 2014. Discovery ensued. In October 2014, the trial court dismissed Howard's survival claims. Discovery continued. In early June 2015, the trial court overruled HCR's motion for judgment on the pleadings, which was based on Civ.R. 10(D)(2). Discovery again continued. In January 2016, the trial court allowed Howard to file a second amended complaint, which added survival claims back into the case, based on Howard's contention that they were not barred by the statute of limitations. Discovery continued to take place, including the deposition of Howard's medical expert, Dr. Fannin, which was taken on March 22, 2016. The admission of liability occurred on April 5, 2016, almost a year after the trial court denied HCR's motion for judgment on the pleadings.

**{¶ 103}** HCR did not mention anything about the denial of this motion when it

admitted liability. Instead, HCR's only comment was that it could not contemplate admitting liability until it received the court's order of March 31, 2016, dismissing the survival claims. Thus, the record contains no facts supporting HCR's contention.

{¶ 104} Furthermore, even if HCR's claims had been substantiated in the record, HCR's motivation is irrelevant. HCR could have been motivated by unfavorable depositions of Howard's experts, by a desire not to have the jury hear evidence concerning the alleged negligence of HCR's employees, or by a myriad of other considerations. None of these factors have anything to do with whether prejudicial misconduct occurred.

{¶ 105} The trial on damages took place on September 27-28, 2016. On September 20, 2016, HCR filed another "omnibus" motion in limine, which contained eight items, including a request to prevent Howard from using the word "kill." On September 26, 2016, the trial court sustained the omnibus motion, without discussing any particular item. *See* Doc. #435, Entry, p. 1.

{¶ 106} As part of the factual background for its position, HCR also relies on the trial court's warning not to discuss adequacy of care. The implication here is that Howard's mention of the word "kill" was even more egregious in light of the court's warning. What occurred, in context, however, was as follows.

{¶ 107} Before trial testimony began, the parties and the court discussed whether HCR was entitled to present testimony about the fact that, after Donald's death, Howard had visited his mother-in-law, who was a resident at Heartland of Springfield. HCR argued that this evidence was admissible as an indication of how Howard was "processing" his grief. Howard objected because he had no choice in the placement of

his mother-in-law at Heartland. He expressed concern over prejudice, insofar as HCR might imply to the jury that HCR's facility could not have been that bad, since Howard's mother-in-law had been placed there. Transcript of Proceedings, Vol. II, pp. 153-165. The trial court ultimately decided to allow the testimony, stating that "I think it's relevant, but again, I don't want to hear any arguments about – I want *this issue* to be limited to the effects of the state of mind or the state of mind of the adult children and not to be – no arguments to be made with respect to the adequacy or inadequacy of the nursing home." *Id.* at p. 165.

{¶ 108} Without excusing any deviation from the ruling on use of the word "kill," the fact is that the court's instruction about commenting on the facility's adequacy were not directed to anything improper Howard had done, or intended to do. Given the context, the instruction was directed more towards HCR than Howard.

{¶ 109} During voir dire and the trial testimony, Howard did not mention the word "kill" or words to that effect. There was discussion, initiated by HCR during voir dire, about the reasons HCR had delayed in admitting liability for Donald's death. HCR stressed that it had made the decision "after years of investigation, depositions * * *." Transcript of Proceedings, Vol. I, p. 121. In opening statement, counsel for HCR again brought up the investigation and tendered an apology to Donald's family. *Id.* at pp. 175-178. HCR then commented once more on the delay in admitting liability and stressed the amount of investigation that needed to be done before an admission could be made. *Id.* at pp. 179-180.

{¶ 110} During closing argument, both sides commented on the delay issue. Transcript of Proceedings, Vol. II, pp. 238-239 (Howard) and 256-261 (HCR). During

HCR's closing argument, HCR's counsel stated that "And by the way, we come into the courtroom on the day set for trial and we say okay we are admitting liability. We throw in the towel on liability. Just put the damage witnesses on. And guess who asked for a continuance?" *Id.* at pp. 260-261.

{¶ 111} During rebuttal argument, Howard's counsel responded to this statement, during which the following exchange occurred:

> MS. QUEZON: * * * So to blame us for that continuance when they did an 11th hour concession that they killed this man, excuse me, that they caused the death of this man, is just inappropriate.

> MR. ANSPACH: Your Honor, I have to object at this point.

> MS. QUEZON: I changed the terminology, Your Honor. That was the wrong terminology. This is a wrongful death case where their negligence caused the wrongful death.

Transcript of Proceedings, Vol. II, pp. 283-284.

{¶ 112} The trial court did not rule on the objection, and HCR did not request a curative instruction then, or after the court instructed the jury.[5]

{¶ 113} Courts are not required to give limiting instructions unless they are requested to do so. (Citations omitted.) *Taylor v. Davignon*, 8th Dist. Cuyahoga No. 79019, 2001 WL 1110338, *2 (Sept. 13, 2001). Furthermore, "failure to request a curative instruction at the time error can be avoided or corrected precludes any claim of error on appeal where it appears that a curative instruction would have obviated the

---

[5] The court did subsequently instruct the jury that both sides' argument about delay was irrelevant. Transcript of Proceedings, pp. 288-289.

potential prejudice." (Citations omitted.) *Id. Accord Mercer v. Bok*, 2d Dist. Montgomery No. CA 9383, 1986 WL 4016, *3 (Mar. 27, 1986); *State v. Root*, 2d Dist. Montgomery No. 20366, 2005-Ohio-448, ¶ 8. Since HCR failed to request a curative instruction, any alleged error has been waived.

**{¶ 114}** Even if we considered the matter under a plain error analysis, we find no error, let alone, plain error. One isolated remark was made, and trial counsel immediately realized and corrected the mistake before HCR objected. "Counsel is afforded wide latitude in addressing the jury during closing argument." (Citations omitted.) *Knepler v. Cowden*, 2d Dist. Montgomery No. 17473, 1999 WL 1243349, *4 (Dec. 23, 1999). "A judgment will not be reversed on the grounds of misconduct in closing arguments unless the circumstances are so reprehensible as to constitute prejudice." (Citation omitted.) *Id. Accord Snowden v. Ekeh*, 2016-Ohio-4976, 67 N.E.3d 1255, ¶ 98 (2d Dist.). After reviewing the transcript, we found no evidence of reprehensive conduct.

**{¶ 115}** HCR also points out that Howard's counsel encouraged the jury to speculate that HCR admitted liability in order to hide evidence from the jury. *See* Transcript of Proceedings, Vol. II, p. 284. HCR objected, and after a bench conference, the court told the parties that "just so it's clear, I know the defense has been accusing the plaintiffs [of] waiting until the last minute to file a claim. The plaintiffs are blaming the defendants for not entering an admission until the 11th hour. I'm not so sure who started the argument, but I don't think any of that is relevant." *Id.* at 287.

**{¶ 116}** The court then said, "I've allowed some argument because I do feel like somebody opened the door, and I felt compelled to let people respond; but you've said

you're ready to move on.   And I am going to give the jury just a limiting instruction on that whole issue."   *Id.*   The court then gave the jury the instruction mentioned above, i.e., that the parties' argument about delay was irrelevant.

**{¶ 117}** As was noted, HCR is the party who initially raised the point about delay, its need to thoroughly investigate the claim before admitting liability, and so forth, during voir dire.   Transcript of Proceedings, Vol. I, pp. 62-63.   When HCR raised the issue again during voir dire, a juror asked if it had taken years for the liability decision to be reached.   *Id.* at p. 121.   At that point, the trial court asked Howard's counsel if he objected to the jurors just being told how long the case had been pending.   *Id.* at p. 122.

**{¶ 118}** Howard's counsel responded that "Yeah, I think counsel said it's taken years for them to make that decision.   I think the cat is out of the bag.   The representation was just made[,] so."   *Id.*   At that point, the trial court told the jury that it was not unusual for civil cases to be pending for a year or two.   *Id.*

**{¶ 119}** Howard did not refer to this issue during its opening statement.   However, during opening statement, HCR's attorney again raised the issue of delay and how long it had taken to investigate the case, to make sure HCR was being represented properly.

**{¶ 120}** As the trial court noted, both parties used this issue for their own purposes. However, HCR opened the door by introducing the matter during voir dire and then discussing it again during opening statement.   In addition to giving the limiting instruction, the trial court gave standard instructions concerning the fact that counsel's statements were not evidence and that "sympathy was not to be a factor" in the jury's decision.   *Id.* at pp. 293 and 305.   We presume the jury followed the court's instructions.   *See, e.g., Beckett v. Warren*, 124 Ohio St.3d 256, 2010-Ohio-4, 921 N.E.2d 624, ¶ 18.   Parties are

also not permitted to take advantage of error they invited or induced a court to make. *State ex rel. Fowler v. Smith*, 68 Ohio St.3d 357, 359, 626 N.E.2d 950 (1994)

**{¶ 121}** Based on the preceding discussion, we find neither error nor plain error concerning the points that have been raised. Accordingly, HCR's Third Assignment of Error is Overruled.

### V. Instruction on Intervening and Superseding Cause

**{¶ 122}** HCR's Fourth Assignment of Error states that:

The Trial Court Erred by Failing to Instruct the Jury on the Law of Intervening and Superseding Cause and for Arbitrarily Omitting Additional Jury Instructions Proposed by Appellants.

**{¶ 123}** Under this assignment of error, HCR contends that the trial court erred in failing to give a requested instruction on intervening and superseding cause. According to HCR, the jury should have been instructed that HCR was only responsible for mental anguish caused by its actions. The focus of HCR's argument is the fact that David Howard's wife passed away two years after Donald's death.

**{¶ 124}** HCR relies on *Duckworth v. Lutheran Med. Ctr.*, 8th Dist. Cuyahoga No. 65738, 1995 WL 33070 (Jan. 25, 1995), for the proposition that "[i]t is well established that relying on general proximate cause instructions while refusing to give an intervening/superseding cause instruction * * * constitutes reversible error." Brief of Appellants, p. 17. HCR contends, that as in *Duckworth*, HCR elicited evidence that an intervening and superseding cause may have existed for David Howard's mental anguish. Therefore, HCR argues that the court should have given its proposed instruction No. 10.

**{¶ 125}** We find this argument concerning, as HCR's proposed jury instruction on intervening and superseding cause was not Instruction No. 10; instead, HCR's proposed Instruction No. 12 was titled "Intervening and Superseding Cause." The body of this instruction stated that:

> Causal Connection is broken when another cause, fully independent of the wrongful death of Donald Lee Howard, intervenes and completely removes the effect of the wrongful death of Donald Lee Howard [sic] becomes the proximate cause of damage.

Doc. #425, p. 13, citing *Ohio Jury Instructions*, CV Section 405.05 (Rev. Jan. 10, 2004); Doc. #430, p. 13.

**{¶ 126}** Howard objected to this instruction because it was related to causation, which was not at issue, and because no evidence supported the instruction. Doc. #437, p. 3. After Howard filed his objections, HCR filed amended proposed jury instructions on September 28, 2016 (during trial). *See* Doc. #442. The amended instructions do not include proposed instruction No. 12. *Id.* In another document filed on September 28, 2016, HCR explained that "[w]ith respect to Plaintiff's objection to Defendants' proposed instruction **NUMBER 12**, Defendants have deleted this proposed jury instruction for the reason cited by Plaintiff." (Bolding and underlining in original) Doc. #444, Reply to Plaintiff's Objections to Defendant's Proposed Jury Instructions, p. 3.

**{¶ 127}** Accordingly, HCR agreed with Howard that an intervening and superseding cause instruction was inappropriate because it related to causation and because it was not supported by the evidence.

**{¶ 128}** Instruction 10, which HCR asserts is the instruction that should have been

given on intervening and superseding cause, is entitled "Negligence and Causation: Separate and Distinct." Doc. #425; p. 11; Doc. #430, p. 11; Doc. #444, p. 11. This instruction states, in all three filings, that:

Negligence and proximate cause are separate and distinct issues. Although Defendants have admitted that the actions of one or more of them caused Donald Howard's death, the Plaintiff must still prove that the damages Plaintiff seeks were proximately caused by Donald Howard's wrongful death.

*Id.*, citing *Ohio Jury Instructions*, CV Section 311.11 (Rev. Oct. 22, 2011).

**{¶ 129}** Howard objected to this instruction because the model instruction used damages and causation interchangeably, and would be confusing to the jury, since the only issue was compensation for Howard's death, if any. The trial court declined to give HCR's instructions, and instructed the jury that:

It is a fundamental purpose of the law that parties damaged by the wrongful conduct of others are entitled to be made whole. Thus in any action involving the award of damages, the objective is to compensate the injured party for their loss and to make the injured party so far as possible whole.

The mere difficulty of assessing damages does not preclude an award where the fact of injury clearly appears. Because some of the elements of Donald Lee Howard's family damages cannot be precisely calculated, the exact amount of damages that would make the parties whole is left to your discretion within the allowable elements under the law.

You must exercise that discretion reasonably and within the range of the proofs in the case. You should determine the amount necessary to make Donald Lee Howard's family whole in light of the circumstances of this case.

You will be asked to determine what sum of money will compensate his beneficiaries for the injury and loss of them resulting from his wrongful death.

Transcript of Proceedings, Vol. II, pp. 295-296. Following these comments, the court instructed the jury on the two pertinent elements of recovery under the wrongful death statute – loss of society and mental anguish. *Id.* at 296.

**{¶ 130}** The trial court's instructions were correct, and the instruction on negligence and causation was unnecessary. In the first place, HCR never contended that Donald's death failed to cause any damages. Beginning in voir dire, HCR noted that it had admitted liability and that the jury was to decide damages. As an example, HCR stated at the beginning of voir dire that "with our admission we've taken that decision [of admitting liability] and said you don't have to hear all of that because under all the circumstances and after a lot of time and investigation we made the decision to admit liability, so that's what's left for you is still the issue of damages. *How much money* will adequately compensate Mr. Howard, his brother, Guy, his sister Maryann." (Emphasis added.) Transcript of Proceedings, Vol. I, p. 63.

**{¶ 131}** HCR then told the jury it would be given guidance on the damages, that the judge "will tell you what the damages are that are allowable under the law and then based on that you will make your decision." *Id.* at p. 64.

{¶ 132} This theme continued, with HCR stating "there is one other important thing because it's the plaintiff who is seeking the money even though we have admitted liability, so that we expect you're gonna [sic] award money, the proof, the proof of what will reasonably and adequately compensate Mr. Howard and his brother Guy and his sister Maryann, the burden of proof, that's the technical legal term, still rests with the plaintiff." *Id.* at p. 65. *See also* further comments by HCR: [p. 81 ("through our admission, we have conceded they are entitled to do [sic] a recovery * * * are you okay with the fact that Heartland of Springfield is to come in and say yeah, we owe them but it's not anywhere near numbers that you have heard?"); p. 85 ("you're gonna [sic] have to decide * * * what is the amount of money that will adequately compensate [them] for the death of their dad"); and pp. 119-120 ("[i]t's just a matter of what will compensate reasonably for the loss sustained under the law as the judge gives it to you")].

{¶ 133} In closing argument, HCR again made similar remarks. *See* Transcript of Proceedings, Vol. II, p. 255 ("the second step in atonement after apology is amends. * * * You have heard numbers and suggestions from Mr. Reins. Amends must be reasonable under all the circumstances."); p. 258 ("* * *we didn't give him [Donald] the care that we should have in a certain respect and therefore we admit it. Tell us what the award should be. Tell us what the amends should be."); p. 266 ("We have admitted an error. We have made an apology. * * * Now it's a matter of making amends."); p. 267 (" * * * what can I do to make it right? That's what we are leaving to you to tell us. * * * Carefully and lawfully use the Ohio Statute in determining damages."); p. 268 ("The Court already told you yesterday there is no place in this courtroom in this case for punishment. It is compensation only."); and pp. 268-270 and 275-278 (suggesting $107,762.25 as

appropriate compensation, which would permit the beneficiaries to buy items like a conversion van and three big-screen televisions, and to pay for lawn care and snow-removal for ten years).

{¶ 134} In view of the above discussion, the trial court did not need to include an instruction on negligence and proximate cause, and did not err in failing to give HCR's requested instruction.

{¶ 135} As final matter, HCR argues that the trial court arbitrarily refused to allow counsel to argue the merits of HCR's instructions. By the time of trial, HCR had filed several sets of instructions, and both sides had filed memoranda regarding objections to the instructions. HCR had ample opportunity to present its position. In addition, HCR made no comment when the court indicated it was going to use Howard's instructions. *See* Transcript of Proceedings, Vol. II, p. 237.

{¶ 136} Based on the preceding discussion, the Fourth Assignment of Error is overruled.


## VI. Dismissal of Survival Claims

{¶ 137} Howard has presented two cross-assignments of error. His First Cross-Assignment of Error states as follows:

> The Trial Court Erred in Granting HCR Judgment on the Pleadings
>
> Dismissing Counts 1, 3, and 4 of the Second Amended Complaint as These
>
> Claims Were Not "Medical Claims" as Defined by R.C. 2305.113.

{¶ 138} Under this assignment of error, Howard contends that the trial court erred in granting HCR's motion for judgment on the pleadings with respect to Counts One,

Three, and Four of the Second Amended Complaint. According to Howard, the corporate defendants were not "medical providers," and Howard's survival claims were not "medical claims" under R.C. 2305.113; instead, they were claims for negligence.

{¶ 139} "A motion for judgment on the pleadings tests the allegations of the complaint and presents questions of law." (Citations omitted.) *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, 958 N.E.2d 1253, ¶ 5 (10th Dist.) As a result, the court's decision is reviewed de novo, which means an appellate court conducts an independent review without deferring to the trial court's decision. (Citations omitted.) *Portfolio Recovery Assocs., L.L.C.*, 2d Dist. Montgomery No. 26692, 2016-Ohio-2962, ¶ 6.

{¶ 140} In October 2014, the trial court dismissed several counts in the First Amended Complaint, concluding that they contained "medical claims" under R.C. 2305.113(E)(3), and were barred because they were not timely filed. The trial court subsequently allowed Howard to file a second amended complaint. After this complaint was filed, HCR filed a motion for judgment on the pleadings, again contending that the claims for non-lethal injuries were "medical claims" and were barred because the complaint was not filed within one year, as required by R.C. 2305.113(A). On March 31, 2016, the trial court granted the motion for judgment on the pleadings and dismissed Counts One, Three, and Four. The court again held that these counts contained "medical claims" and were barred by the statute of limitations. The court did not discuss its reasoning.

{¶ 141} Subsequently, after HCR admitted liability, the court allowed Howard to address the issue of whether its survival claims should be reinstated. However, the court

ultimately rejected Howard's position. The court agreed with Howard that "the corporate defendants have taken 'contradictory and inconsistent positions throughout the history of this litigation simply because it benefits their position at the time' and that therefore they are being disingenuous in this litigation." Doc. #405, May 23, 2016 Entry, p. 2. This comment was based on the fact that "the corporate defendants admitted in their motion for judgment on the pleadings that they were medical providers in order to secure the protection of the one-year statute of limitations but later admitted in their summary judgment that they are not medical providers in hopes of being dismissed from the wrongful death action." *Id.* at p. 1.

{¶ 142} The court stated that it respected Howard's "desire to inject some integrity into this litigation," but concluded that it would rely on the law in making its decisions. *Id.* at p.2. The court then reiterated its prior holding (again without discussion) that the corporate defendants were medical providers under R.C. 2305.113, and that the survival claims were barred by the statute of limitations.

{¶ 143} R.C. 2305.113(A) applies a one-year statute of limitations to medical claims. As pertinent here, R.C. 2305.113(E)(3) defines a "medical claim" as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility, against any employee or agent of a physician, podiatrist, hospital, home, or residential facility, or against a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic, and that arises out of the medical diagnosis, care, or treatment of any person." The definition of "medical claim" also extends to the following

items:

(a) Derivative claims for relief that arise from the plan of care, medical diagnosis, or treatment of a person;

(b) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and to which either of the following applies:

(i) The claim results from acts or omissions in providing medical care.

(ii) The claim results from the hiring, training, supervision, retention, or termination of caregivers providing medical diagnosis, care, or treatment.

(c) Claims that arise out of the plan of care, medical diagnosis, or treatment of any person and that are brought under section 3721.17 of the Revised Code;

(d) Claims that arise out of skilled nursing care or personal care services provided in a home pursuant to the plan of care, medical diagnosis, or treatment.

R.C. 2305.113(E)(3)(a)-(d)[6]

{¶ 144} According to Howard, before the one-year limitations period in R.C. 2305.113(A) can be applied, a conjunctive test must be satisfied. First, the claim "must be asserted against one or more of the specifically enumerated medical providers" and second, the claim must arise "out of medical diagnosis, care, or treatment." *Estate of*

---

[6] R.C. 3721.17 pertains to grievances filed in connection with violations of nursing home residents' rights.

*Stevic v. Bio-Med. Application of Ohio, Inc.*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, ¶ 18. Howard argues that neither prong was met, because the survival claims were not "medical claims," and the defendants in question - the corporate defendants and the nursing home administrator – were not medical providers as enumerated in R.C. 2305.113(E).

**{¶ 145}** Howard is correct regarding the holding in *Stevic.* There, the court stated that " 'medical claim' as defined in R.C. 2305.113(E)(3) has two components that the statute states in the conjunctive: (1) the claim is asserted against one or more of the specifically enumerated medical providers and (2) the claim arises out of medical diagnosis, care, or treatment." *Id.* The issue before us, thus, involves two parts: (1) whether the "corporate defendants" and the administrator were medical providers; and (2) whether the claims in Counts One, Three, and Four of the Second Amended Complaint arose from medical diagnosis, care, or treatment.

**{¶ 146}** Under Civ.R. 12(C), a plaintiff is "entitled to have all the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in her favor as true." (Citation omitted.) *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165–66, 297 N.E.2d 113 (1973). Furthermore, because the motion presents only issues of law, "determination of the motion for judgment on the pleadings is restricted solely to the allegations in the pleadings." (Citation omitted.) *Id.* As relevant here, the "pleadings," according to Civ.R. 7(A), are the complaint and answer.

**{¶ 147}** Consequently, in considering the issues, we refer only to the Second Amended Complaint and HCR's Answer to the Second Amended Complaint, as those are the matters that would have been considered in ruling on a motion for judgment on

the pleadings. We, therefore, will disregard the argument in Part "D" (pp. 19-21) of HCR's Brief responding to the cross-appeal, during which HCR refers to various corporate agreements that were attached to a deposition.

**{¶ 148}** The Second Amended Complaint stated that whenever the term "Corporate Defendants" was used, the term referred to and included "HCR ManorCare, Inc., HCR Manor Care Services, Inc. [correctly "LLC"], Heartland Employment Services, LLC, and Heartland of Springfield, Ohio, LLC." Doc. #137, ¶ 17. The complaint further stated, concerning all the "corporate defendants," that they were corporations "engaged in the custodial and personal care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at Heartland of Springfield." *Id.* at ¶ 8, 9, 10, and 11. These paragraphs also stated that these entitles, other than Heartland of Springfield, were not licensed as entities entitled to operate Heartland of Springfield. *Id.* HCR admitted the latter allegations. Doc. #158, ¶s 8, 9, 10, and 11.

**{¶ 149}** The factual summary in the Second Amended Complaint indicated that Donald was 78 when he was admitted at Heartland of Springfield, and that he remained there for almost four months, until his death in April 2012. The summary further alleged that as a result of Defendants' failure to discharge obligations of care, Donald suffered "catastrophic injuries, disfigurement, extreme pain, suffering, and mental anguish." *Id.* at ¶ 25. Among the wrongs allegedly inflicted that accelerated his deterioration beyond the normal aging process were falls, pressure sores, weight loss, dehydration, infections, sepsis and death. *Id.*

**{¶ 150}** Count One alleged corporate negligence of the corporate defendants due

to a breach of duty in failing to properly manage, operate, and control Heartland of Springfield.   The listed negligence of these defendants included: lack of sufficient staffing to meet the needs of residents; failure to implement adequate guidelines and procedures for investigating and correcting deficiencies and licensure violations; failure to properly allocate funding to comply with applicable statutes and regulations or to ensure sufficient staffing, supplies, and food; and failure to recognize, timely report, and correct noncompliance with statutes and regulations.   Doc. #137, ¶s 38-45.

{¶ 151} Count Three asserted claims against administrator defendants and John Does 1 through 10.[7]   The wrongs alleged in this count included the same general allegations as Count One.   In addition, however, the staffing failure included the following:   failure to ensure that Donald had adequate hygiene and sanitary care, and clean bed linens; failure to ensure that Donald received timely care assessments, prescribed medication and diet; failure to protect Donald from accidental or intentional injuries; failure to keep Donald comfortable and warm and prevent bed sores; and failure to ensure that Donald was provided a safe environment free from abuse and neglect.   *Id.* at ¶s 54-63.

{¶ 152} Finally, Count Four alleged nursing home violations by the corporate defendants, John Does 1 through 10, and unidentified entities 1 through 10.   The claims in this count were essentially the same as those in Count One, but were based on breach of contract, breach of duties created by any state statute or rule, or breach of applicable federal statute or regulation.   *Id.* at ¶ 66.   According to Count Four, these failures

---

[7] The administrator defendant was Kelly Meckstroth, who was dismissed from the action by the court after the motion for judgment on the pleadings had been granted.   Transcript of Proceedings, Doc. #308, p. 4.

resulted in physical injuries to Donald, including "falls, pressure sores, weight loss, dehydration, infections, sepsis," and mental injuries, including "extreme pain, suffering, mental anguish, embarrassment, and fright * * *." *Id.* at ¶ 71.

{¶ 153} Other than the admissions mentioned above, HCR denied the allegations in the Second Amended Complaint. Construing the allegations in the Second Amended Complaint as true, the issue is whether the corporate defendants fit within the definition of "statutorily enumerated" medical providers in R.C. 2305.113(E)(3), and whether the claims arise from medical diagnosis, care, and treatment.

{¶ 154} As was noted, the providers specifically enumerated in R.C. 2305.113(E)(3) are: "a physician, podiatrist, hospital, home or residential facility;" "any employee or agent of a physician, podiatrist, hospital, home, or residential facility"; and "a licensed practical nurse, registered nurse, advanced practice registered nurse, physical therapist, physician assistant, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic."

{¶ 155} *Chalmers*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, involved similar allegations against the same corporate defendants. We have already discussed *Chalmers* in the context of our Civ.R. 10(D)(2) discussion.

{¶ 156} The plaintiff in *Chalmers* asserted both wrongful death and survival claims against Heartland of Westerville, OH, LLC, HCR ManorCare, Inc., HCR Manor Care Services, Inc., and Heartland Employment Services, LLC, based on events that occurred while the plaintiff was a resident at the Heartland of Westerville nursing home. *Id.* at ¶ 1-6. Concerning the survival claims only, the trial court concluded that they were barred by the one-year statute of limitations because they were "medical claims" under R.C.

2305.113(E)(3). *Id.* at ¶ 18. The procedural posture in *Chalmers* was quite different from the case before us, however, because the survival claims were dismissed after summary judgment motions had been filed; they were not dismissed based on an analysis only of the pleadings. *Id.*

{¶ 157} With respect to the survival claims, the plaintiff in *Chalmers* argued that the trial court had disregarded *Stevic's* first prong and had failed to consider whether the remaining corporate defendants were medical providers, since they were not licensed by Ohio to provide skilled nursing care. *Id.* at ¶ 25-26.[8] The court of appeals observed that the HCR "corporate defendants" had conceded they were not licensed by the State of Ohio to provide personal care services and skilled nursing care, and, therefore, did not meet the definition of "nursing home" under R.C. 3721.01(A)(6). *Id.* at ¶ 26.[9] This is the same concession that HCR made here, in its answer to the Second Amended Complaint, when it admitted the defendants, other than Heartland of Springfield, were not licensed to operate the nursing home.

---

[8] The trial court had granted summary judgment in favor of Heartland of Westerville on the survival claims, and the plaintiff did not challenge that finding. *Chalmers*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, at ¶ 26. Thus, the remaining defendants were the corporate entities other than the nursing home itself.

[9] The use of the definition of "nursing home" in R.C. 3721.01(A)(6) is based on the following analysis. R.C. 2305.113(E)(3) lists statutorily enumerated medical providers, one of which is a "home." R.C. 2305.113(E)(14) defines "home" by using the same meaning of "home" as R.C. 3721.10. In turn, R.C. 3721.10 (A)(1) incorporates the definition of "home" in R.C. 3721.01. Resort to R.C. 3721.01(A)(1)(a) indicates that it includes a nursing home in the definition of "home." Finally, R.C. 3721.01(A)(6), used in *Chalmers*, further states that " '[n]ursing home' means a home used for the reception and care of individuals who by reason of illness or physical or mental impairment require skilled nursing care and of individuals who require personal care services but not skilled nursing care. A nursing home *is licensed* to provide personal care services and skilled nursing care." (Emphasis added.)

{¶ **158**} The importance of this is that the complaint in *Chalmers* could not have been dismissed at the pleading stage based on *Stevic* (other than perhaps with respect to the nursing home itself), since one prong of R.C. 2305.113(E)(3) had not been satisfied. *Stevic*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, at ¶ 18. However, the court of appeals did not specifically comment on this point, other than agreeing that the corporate defendants did not meet the definition of "nursing home" under R.C. 3721.01(A)(6).

{¶ **159**} Instead of basing its decision on this point, the court of appeals concluded that summary judgment was proper on the survival claims because plaintiff's "various *non-medical claims* against the aforementioned entities are not supported by the evidence." (Emphasis added.) *Chalmers* at ¶ 29. The "non-medical" survival claims in *Chalmers* were similar to those asserted here, i.e., they were based on "(1) a lack of staffing and failure to implement administrative guidelines; (2) a failure to provide [the decedent] with certain residents' rights; (3) an exaggeration of the entities' ability to provide the appropriate level of care to meet [the decedent's] needs when, in fact, the entities would provide the least amount of care possible in order to maximize profit; and (4) the entities' failure to warn [decedent] of the inadequate staffing and unqualified nursing personnel." *Id.* at ¶ 31.

{¶ **160**} The conclusion that can be drawn from the court's remarks is that dismissal of the survival claims would have been improper at the pleading stage under *Stevic* for two reasons: (1) the corporate defendants (other than the nursing home) did not fit within the definition of "home" under R.C. 2305.113(E)(3), meaning they were not "statutorily enumerated" medical providers; and (2) the asserted survival claims were non-

medical claims. Applying this holding to the case before us, which involves similar allegations, dismissal at the pleading stage would have been improper. We are not bound by the court's conclusion in *Chalmers* that the claims were non-medical claims; we merely note it.

{¶ 161} Ultimately, the court of appeals concluded in *Chalmers* that summary judgment was properly rendered in favor of the HCR corporate defendants with respect to the survival claims.[10] However, this was not because the court had concluded that the claims were medical claims. Instead, the court stated that:

> Having reviewed the record in this case, we agree with the trial court that appellant's various *non-medical claims* against the aforementioned entities are not supported by the evidence. Under these claims, appellant asserted that Costell's [the decedent's] injuries resulted from (1) a lack of staffing and failure to implement administrative guidelines; (2) a failure to provide Costell with certain residents' rights; (3) an exaggeration of the entities' ability to provide the appropriate level of care to meet Costell's needs when, in fact, the entities would provide the least amount of care possible in order to maximize profit; and (4) the entities' failure to warn Costell of the inadequate staffing and unqualified nursing personnel. However, the record contains sparse evidence to support such causation arguments.

---

[10] As was previously noted, the court of appeals did reverse the summary judgment on the wrongful death claims, concluding that the plaintiff should be given an opportunity to cure a defective Civ.R. 10(D)(2) affidavit. *Chalmers*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, at ¶ 33-50.

On the issue of causation, the only tenable argument to be made from the evidence is that Costell was injured following a lack of adequate supervision from Heartland's nursing personnel. This is precisely the nature of the time-barred medical claim brought against Heartland of Waterville OH, LLC. The claims for negligence, fraud, breach of fiduciary duty, and premises liability against the remaining entities lack evidentiary support on the issue of causation, and were therefore appropriately dismissed on summary judgment.

(Emphasis added.) *Chalmers*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, at ¶ 29-30.

{¶ 162} Again, the procedural posture in *Chalmers* was different, being summary judgment rather than judgment on the pleadings. We also note that the pleadings are not clear concerning whether the nursing home administrator, Meckstroth, was an employee of the nursing home or of another entity. However, as administrator of the home, she could be considered an "agent," and would, therefore, have been within the statutorily enumerated medical providers in R.C. 2305.113(E)(3). However, as was noted, both prongs of R.C. 2305.113(E)(3) must be satisfied.

{¶ 163} In responding to Howard's arguments, HCR contends that regardless of the manner in which Counts One, Three, and Four were phrased, they necessarily arise from Howard's medical diagnosis, care, and treatment, and, therefore, are medical claims for purposes of the statute of limitations, even if the corporate defendants and nursing home administrator were not medical providers. We disagree.

{¶ 164} As was noted, the trial court granted the motion for judgment on the

pleadings regarding these counts, and our analysis is limited to the content of the pleadings. In essence, the amended complaint alleged, with respect to Meckstroth and the corporate defendants, that failures to adequately fund and staff the facility, failures to adequately train and supervise staff, failures to document and report neglect and abuse, and failures to correct deficiencies caused injury to Donald, including various physical injuries, including falls, as well as pain and mental anguish.

{¶ 165} In *Christian v. Kettering Med. Ctr.*, 2016-Ohio-1260, 62 N.E.3d 658 (2d Dist.), we noted that "[t]he terms 'medical diagnosis' and 'treatment' are terms of art, which relate to the identification and alleviation of a physical or mental illness, disease, or defect." *Id.* at ¶ 29, citing *Browning v. Burt*, 66 Ohio St.3d 544, 557, 613 N.E.2d 993 (1993). We also commented that "[i]n the context of the statute of limitations for 'medical claims,' 'care' has been defined as 'the prevention or alleviation of a physical or mental defect or illness.' The Supreme Court of Ohio has cautioned that the term 'care' 'should not be broadly interpreted when the context in which it is used is properly understood.' " *Id.*, quoting *Browning* at 557.

{¶ 166} After making these observations, we cited various cases in which injury was caused to hospital patients or nursing home residents, but the claims were caused by negligence, rather than being part of medical diagnosis and treatment. For example, we cited *Eichenberger v. Woodlands Assisted Living Residence, L.L.C.*, 2014-Ohio-5354, 25 N.E.3d 355 (10th Dist.), in which a resident's "injury allegedly arose from falling out of a wheelchair while on the way to lunch at an assisted living facility." *Christian* at ¶ 35. Another example was an injury caused by "falling backwards while washing hands in a bathroom while receiving rehabilitative care following surgery * * *." *Id.*, citing *McDill v.*

*Sunbridge Care Ents., Inc.*, 4th Dist. Pickaway No. 12CA8, 2013-Ohio-1618. We also cited a case where the mode of injury was found to involve a medical claim because it was " 'ancillary to and an inherently necessary part of [the patient's] diagnosis and treatment' * * *." *Id.* at ¶ 37, quoting *Long v. Warren Gen. Hosp.*, 121 Ohio App.3d 489, 700 N.E.2d 364 (11th Dist.1997).

{¶ 167} *Christian* was before us after summary judgment had been granted in favor of the hospital. The plaintiff had been injured in the parking lot of the hospital when an emergency room nurse attempted to transfer her from a vehicle to a wheelchair. *Id.* at ¶ 3. The hospital contended that this was a "medical claim" because plaintiff was there for medical treatment; in contrast, the plaintiff argued that the claim was for negligence. *Id.* at ¶ 5 and 31. We concluded that the trial court erred in granting summary judgment in the hospital's favor because the nurse's act of transferring the plaintiff from the vehicle to a wheelchair "was too attenuated from the receipt of medical treatment, care, and diagnosis to constitute a 'medical claim.' " *Id.* at ¶ 42. As a result, we reversed the summary judgment that had been granted to the hospital on statute of limitations grounds. *Id.* at ¶ 43.

{¶ 168} Obviously, these cases are fact-intensive – a situation that does not lend itself well to resolution based on the pleadings. "The purpose of Ohio notice pleading provisions is to do exactly that, to-wit, to notify a defendant of the allegations against him so that he might prepare a defense thereon." *Konicki v. Salvaco, Inc.*, 16 Ohio App.3d 40, 44, 474 N.E.2d 347 (2d Dist.1984). *Accord Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 13.

{¶ 169} HCR contends that this case does not involve negligence because Howard

"did not allege, for example, that insufficient funding caused a ceiling tile to fall on the decedent's head." HCR's Reply Brief, p.11. This level of specificity is not required in a complaint. There are many ways in which a resident could be injured by negligence, including falls, without the claim being considered a "medical claim."

{¶ 170} The Supreme Court of Ohio noted in the context of a medical credentialing case that involved both credentialing and alleged medical malpractice, that "[w]hile the acts or omissions of a hospital in granting and/or continuing staff privileges to an incompetent physician may ultimately lead to an act of medical malpractice by the incompetent physician, the physician's ultimate act of medical malpractice is factually and legally severable and distinct from the hospital's acts or omissions in negligently credentialing him or her with staff membership or professional privileges." *Browning*, 66 Ohio St.3d at 557, 613 N.E.2d 993. While these comments are made in a somewhat different context, they are not inapposite. Again, factual matters are difficult to resolve at the pleading stage.

{¶ 171} As in *Chalmers*, summary judgment might potentially be appropriate in the case before us (a point about which we express no view, due to the lack of facts). However, dismissal at the pleading stage was inappropriate. Accepting the material allegations of the pleadings as true, and construing the reasonable inferences in Howard's favor, as is required, indicates that the corporate defendants were not "statutorily enumerated medical providers," and that the alleged claims against the corporate defendants and administrator did not arise from medical diagnosis, care, and treatment. As a result, at this point in the process, it is error to say the survival claims were "medical claims" under R.C. 2305.113(E)(3), and were not timely filed under R.C.

2305.113(A). *Stevic*, 121 Ohio St.3d 488, 2009-Ohio-1525, 905 N.E.2d 635, at ¶ 18. *See also Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, 958 N.E.2d 1253, ¶ 8 (10th Dist.) (holding that "to constitute a medical claim within the statutory definition, a plaintiff must allege proper content against a proper defendant").

{¶ 172} Based on the preceding discussion, the First Cross-Assignment of Error is sustained. This matter will be reversed with respect only to the judgment on the pleadings entered on the survival claims, and that issue will be remanded to the trial court for further proceedings. The reversal will not affect the verdict on the wrongful death claims, as liability was admitted for the death, and the jury verdict involved only the damages caused to the wrongful death beneficiaries for the death.

## VII. Prejudgment Interest

{¶ 173} Howard's Second Cross-Assignment of Error states that:

The Trial Court Erred in Denying Appellee's Request for Discovery on His Motion for Prejudgment Interest.

{¶ 174} Under this assignment of error, Howard contends that the trial court erred in refusing to let him conduct discovery in connection with the post-trial motion for prejudgment interest that was filed on November 1, 2016. The court set a non-oral hearing on the motion for prejudgment interest for January 26, 2017. On January 25, 2017, Howard asked for a 60-day continuance of the hearing in order to allow him to obtain answers to interrogatories and to depose HCR ManorCare's associate general counsel. Howard attached a copy of the proposed interrogatories to his motion. The trial court overruled the motion for continuance without comment on January 26, 2017.

{¶ 175} Subsequently, the court filed a decision on January 30, 2017, overruling Howard's request for pre-judgment interest. The court stated that it had reviewed the pleadings and found that HCR complied with discovery requests and had made a good faith monetary offer to settle the case.

{¶ 176} According to Howard, the court erred in overruling his motion for a continuance because the Supreme Court of Ohio has held that the discovery process applies to proceedings for pre-judgment interest. Howard also notes that discovery is needed because information required to meet the burden of establishing a right to prejudgment interest is typically in the hands of the party resisting such an award.

{¶ 177} R.C. 1343.03(C)(1) permits an award of prejudgment interest "[i]f, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, * * * the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case * * * ." In situations where a party has admitted liability in a pleading, R.C. 1343.03(C)(1)(a) requires the interest to be computed "from the date the cause of action accrued to the date on which the order, judgment, or decree was rendered."

{¶ 178} The party seeking prejudgment interest has the burden of proving entitlement to the award. *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 659, 635 N.E.2d 331 (1994). Decisions on whether to award prejudgment interest are reviewed for abuse of discretion. *Id.* at 657. An abuse of discretion "means we will affirm unless

we find the trial court's attitude 'unreasonable, arbitrary or unconscionable.' " *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 300, 741 N.E.2d 155 (2d Dist.2000), quoting *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "Decisions are unreasonable if they are not supported by a sound reasoning process." *Id.*

**{¶ 179}** In discussing this issue, both sides rely on *Cotterman v. Cleveland Elec. Illum. Co.*, 34 Ohio St.3d 48, 517 N.E.2d 536 (1987). Howard argues, correctly, that the Supreme Court held in *Cotterman* that "[t]he R.C. 1343.03(C) proceeding is amenable to the discovery process." *Id.* at paragraph two of the syllabus. In contrast, HCR correctly notes that the court also held in *Cotterman* that "[t]he trial court should exercise such governance so as to speedily resolve the post-trial discovery." *Id.* According to HCR, Howard delayed an inordinate amount of time (84 days) after filing the motion before taking any initiative concerning discovery. HCR further contends that a non-oral hearing is sufficient to meet the statutory requirements.

**{¶ 180}** Taking the hearing issue first, the Supreme Court of Ohio has held that before trial courts rule on the merits of motions for prejudgment interest, they must set a date certain for an evidentiary hearing. *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, paragraph one of the syllabus. However, *Pruszynski* also held that a "trial court has the discretion to determine the nature of the evidentiary hearing to be held, as it is in the best position to select the kind of evidence necessary to make the findings required by R.C. 1343.03(C) and determine whether an award of prejudgment interest is proper." *Id.* at paragraph two of the syllabus.

**{¶ 181}** In discussing these issues, the court commented that "a motion for

prejudgment interest addresses facts and issues different from those submitted at trial. In fact, the issue of prejudgment interest pursuant to R.C. 1343.03(C) is akin to those areas of law calling for factual determinations reviewable under an abuse-of-discretion standard because it calls upon the trial court to make factual determinations regarding the parties' good faith efforts to settle a case." (Footnote and citation omitted.) *Id.* at ¶ 11. The court further observed, however, that "[h]aving conducted case-management conferences, pretrials, settlement conferences, and the trial, a court in some instances may decide that presentation of evidence by affidavits, depositions, and other documents is sufficient; at other times, the trial court may decide that an oral evidentiary hearing is more appropriate." *Id.* at ¶ 13.

{¶ 182} As was noted, Howard filed his motion in early November 2016. He did not attach affidavits to the motion, but did include pleadings and part of a deposition to support his contention that HCR failed to conduct discovery in good faith. In addition, Howard discussed settlement offers made prior to trial, with HCR's highest offer being less than 25% of what the jury ultimately found.

{¶ 183} HCR responded to the motion on November 14, 2016, and also attached pleadings and other materials, although no affidavits. *See* Doc. #451. Among other things, HCR argued that it had conducted discovery in good faith and had provided Howard with more than 20,000 documents. HCR also stressed its statement at the settlement hearing, which indicated that the amount presented was not HCR's final offer. *Id.* at p. 16.

{¶ 184} Notably, the trial court presided over the case for more than two years, and had knowledge of what had transpired, including any discovery issues and settlement

discussions. As a result, the court did not act arbitrarily or unreasonably in declining to hold an oral evidentiary hearing. Consistent with *Pruszynski,* the trial court set a date certain for the hearing, and the parties could have submitted whatever information they desired prior to the hearing date.

{¶ 185} Regarding the court's denial of a continuance to conduct discovery, we again find that the court did not act arbitrarily, unconscionably or unreasonably. In *Moskovitz*, which was decided after *Cotterman*, the Supreme Court of Ohio stressed that "the purpose of R.C. 1343.03(C) is to encourage good faith efforts to settle a case outside the trial setting. The focus of an R.C. 1343.03(C) post-trial hearing for prejudgment interest must be the pretrial settlement efforts made between the plaintiffs and defendants and/or their insurers. Often, the only way for a party to prove another party's failure to make a good faith effort to settle is by obtaining the claims file of an insurer." *Moskovitz*, 69 Ohio St.3d at 661, 635 N.E.2d 331. The court also emphasized that "[t]he purpose of Civ.R. 26 is to provide a party with the right to discover all relevant matters, not privileged, that are pertinent to the subject of the pending proceeding." *Id.*, citing Civ.R. 26(B)(1).

{¶ 186} *Moskovitz* was decided in 1994, and the right to discovery in such situations has been established for many years. As a result, Howard would have been well aware of his right to conduct discovery. The right, however, is not unlimited. Notably, Howard gave no explanation of why he waited until the day before the scheduled hearing to even mention discovery. Howard could have sent interrogatories or could have scheduled a deposition of HCR's assistant counsel as early as the beginning of November 2016. Had Howard taken such steps then, the trial court could have addressed any issues promptly.

**{¶ 187}** "A judge's decision to grant or deny a party's request for a continuance is within the sound discretion of the judge." (Citation omitted.) *In re Disqualification of Pontious*, 94 Ohio St.3d 1235, 1236, 763 N.E.2d 603 (2001). *Accord Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 152 (2d Dist.) (courts have broad discretion in deciding whether to deny or grant continuances). Again, under the circumstances, we find no abuse of discretion in the court's decision to deny Howard's request for a continuance.

**{¶ 188}** Accordingly, Howard's Second Cross-Assignment of Error is overruled.


## VIII. Conclusion

**{¶ 189}** All of HCR's assignments of error are overruled, Howard's First Cross-Assignment of Error is sustained, and his Second Cross-Assignment of Error is overruled. The judgment of the trial court, therefore, is affirmed in part and reversed in part. The judgment is reversed only as to the dismissal of Counts One, Three, and Four (the survival claims) in the Second Amended Complaint, and with regard to these claims, the matter is remanded to the trial court for further proceedings. The remainder of the judgment is affirmed.


. . . . . . . . . . . . .


FROELICH, J. and TUCKER, J., concur.

Copies mailed to:

Michael J. Fuller, Jr.
D. Bryant Chaffin
Robert M. Anspach
Mark D. Meeks
J. Randall Engwert
Joseph S. Center
Hon. Douglas M. Rastatter